208 Cal.App.3d 1489 (1989)
257 Cal. Rptr. 1
In re BABY GIRL D., a Person Coming Under the Juvenile Court Law.
PEDRO SILVA, as Chief Probation Officer, etc., Plaintiff and Respondent,
v.
CAROLYN D., Defendant and Appellant; JOHN S. et al., Movants and Respondents.
Docket No. H004133.
Court of Appeals of California, Sixth District.
January 5, 1989.
*1490 *1491 COUNSEL
Anna L. Ollinger, under appointment by the Court of Appeal, for Defendant and Appellant. *1492 Leo Himmelsbach, District Attorney, R.J. Masterson, Deputy District Attorney, Donald L. Clark, County Counsel, L. Michael Clark, Deputy County Counsel, and Jerome E. Brock for Plaintiff and Respondent and for Movants and Respondents.
OPINION
BRAUER, J.
Carolyn D., mother of the minor, appeals from a postpermanency planning order continuing the minor's placement in a foster-adoptive home. The mother contends that the trial court erred in not placing the minor with the mother's aunt, who was already caring for the mother's other child (the minor's half-sister, also a dependent of the court). We conclude that the trial court was under no duty to accord the mother's aunt preferential consideration as a "relative." The continued placement with the foster parents was a result of the mother's and her aunt's own failure to object to placement decisions until the child had bonded to her foster family. We find no error and affirm.
Baby Girl D. was born on December 11, 1985, severely addicted to heroin. She was taken into protective custody the following day and a petition was filed on December 16, 1985, under section 300, subdivision (a) of the Welfare and Institutions Code.[1] On January 3, 1986, she was declared a dependent of the court and reunification services were ordered for the mother, particularly drug counseling. On March 9, 1986, the minor was transferred from an emergency "satellite" home to her present foster-adoptive home.
At the permanency planning hearing on May 1, 1987, the juvenile court directed county counsel to initiate an action under Civil Code section 232 to declare the minor permanently free from the custody and control of her parents. The court's order was based on findings that the mother had failed to comply with reunification requirements. It was at this hearing that the Hargroves, the minor's maternal great-aunt and uncle, first appeared and formally requested that the minor be placed with them. The juvenile court ordered the Department of Social Services (DSS) to evaluate the Hargroves' home for possible placement and continued the hearing until the following June. On May 27, 1987, the Hargroves submitted a request for relative home placement and the social worker evaluated their home. The social worker's ensuing report found that the Hargroves' home was a suitable *1493 environment for the minor, but recommended against moving her there, primarily because the child had bonded with her foster parents.
On August 14, 1987, the Hargroves moved unsuccessfully to intervene, requesting party status. Their motion for reconsideration was also denied on January 5, 1988, Meanwhile, resolution of the placement issue was repeatedly postponed until it was finally decided on January 20, 1988. The court ordered that the minor remain in her foster-adoptive home and that the previous order authorizing commencement of termination proceedings remain in effect. This appeal followed.
(1a) The mother's primary contention on appeal is that her aunt should have been accorded preferential consideration as a "relative" at each stage of the dependency process. To support her position she cites sections 281.5 and 361.3, which govern placement decisions at the time of removal from parental custody.
Section 281.5 requires the probation officer who is recommending removal of a minor from the physical custody of the parent to prefer placement with a relative, if it is in the best interests of the child and conducive to reunification with the parent. "Relative" is not defined in this statute, so it is unclear whether great-aunts are within its purview. (2) Assuming that the Legislature did intend to include great-aunts, it may be that the probation officer erred at the jurisdictional hearing in not suggesting the Hargrove home as a placement for the minor.[2]
If so, this error is nevertheless insignificant in light of the mother's eventual failure to reunify with the minor. (3) The object of dispositional hearings is to find a temporary caretaker who will meet the child's physical and psychological needs while cooperating in reunification efforts. A relative, who presumably has a broader interest in family unity, is more likely than a stranger to be supportive of the parent-child relationship and less likely to develop a conflicting emotional bond with the child.
(1b) However, once the juvenile court determines at a permanency planning hearing that reunification is no longer possible and that a child should be freed for adoption, there is no longer any reason to give relatives preferential consideration in placement. The overriding concern at this *1494 point is to provide a stable, permanent home in which a child can develop a lasting emotional attachment to his or her caretakers. It is for this reason that in any subsequent decision on adoptive placement, a foster parent to whom the minor already has "substantial emotional ties" necessarily is entitled to preference over all other candidates. (§ 366.25, subd. (g).)
(4a) An appeal to section 361.3 must fail for similar reasons. This section states: "(a) In any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative.... [¶] ... (c) For purposes of this section: [¶] (2) `Relative' means an adult who is a grandparent, aunt, uncle, first cousin, or sibling."
The language of section 361.3, subdivision (c)(2) is explicit, An aunt or uncle is a "relative"; a great-aunt is not. (5) An "aunt" is "the sister of one's father or mother." (1 Oxford English Dict. (1971) p. 142.) (4b) Because Mrs. Hargrove does not fall into the category of "relative" defined by section 361.3, subdivision (c)(2), the trial court was under no duty to give her preferential consideration.
(1c) Even if she were considered a relative under a most liberal construction of section 361.3, the mother is precluded from attacking the trial court's judgment under this statute for the same reason she fails to persuade us under section 281.5. At the dispositional hearing the minor was less than one month old. The mother or her aunt could have come forward at that time to request placement with the Hargroves. They also had opportunity to contest the recommendations of the social worker at the semiannual review hearings of May 28, 1986, and November 4, 1986.
Not until May of 1987 did the Hargroves come forward and formally request placement, and they did not move to intervene until August 1987. By the time they became involved in the case the focus of the court was on establishing a permanent plan for the child. The minor was 17 months old and "firmly bonded" to her foster-adoptive parents, according to a psychological evaluation.[3] (6) (See fn. 4.), (1d) The juvenile court properly followed the legislative policies expressed in section 366.25 in ordering continued placement with the foster parents.[4]
*1495 At the time of the order from which the mother now appeals, the minor had been with her foster-adoptive family for most of her life. Evidently, the trial court felt that to "wrench" her away from her source of stability and security to live with a strange family would be detrimental to the child's welfare. We see no abuse of discretion in this exercise of the court's judgment. It would be contrary to Legislative policy to uproot the child and force her to adjust to a new home.
The mother maintains that the removal process need not be traumatic, if handled by gradually increasing the frequency and length of visits to permit the minor to bond to her "natural family." We disagree. At the time of the trial court's order this child was already two years old. She needs permanency and security now.
The order is affirmed.
Agliano, P.J., and Elia, J., concurred.
NOTES
[1] All statutory references are to the Welfare and Institutions Code unless otherwise noted.
[2] As appellant points out, the probation department mentioned the Hargroves in its report for the hearing only in the context of where the mother would live during her rehabilitation. It apparently did not consider or investigate placing the minor there. According to her declaration, the maternal great-aunt had communicated her desire to care for or at least visit with the child on more than one occasion prior to the minor's placement in the foster-adoptive program.
[3] Terry Johnston, Ph.D., reported on June 10, 1987, that the relationship between the minor and her foster parents was one of "solid trust." In Dr. Johnston's opinion, "to move this child out of [a] stable, nurturing family to live in a home with a virtually unknown parental figure, [and] with a half-sister who has emotional problems and who has shown no interest at all in her, would be extremely detrimental to her."
[4] Indeed, we believe the juvenile court did not go far enough in carrying out the intent of the Legislature. The court was not required at the May 1 permanency planning hearing to consider a new request from a relative. Furthermore, section 352, subdivision (a), mandates that the court avoid excessive continuances. It must give "substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." Nevertheless, the court repeatedly continued the hearing on the issue of placement to accommodate the Hargroves' request and allowed protracted litigation over their motion to intervene. All this delay was at the expense of the minor, and prevented her foster parents from giving her an unrestrained emotional commitment. (See In re Micah S. (1988) 198 Cal. App.3d 557, 564 [243 Cal. Rptr. 756] (conc. opn. of Brauer, J., passim).)