[No. C008472. Third Dist. Mar. 26, 1991.]

In re RODGER H., a Person Coming Under the Juvenile Court Law.
SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, Plaintiff and Respondent, v.
EDITH M., Defendant and Appellant.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, III, V and VI of the Discussion.

[redacted]

**Counsel**

David Fuller, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Cheadle, County Counsel, and Steven B. Bassoff for Plaintiff and Respondent.

Howard M. Hoffman, under appointment by the Court of Appeal, for Minor.

**Opinion**

**SIMS, Acting P. J.**—Appellant Edith M. appeals from a disposition order removing her two-year-old son, Rodger H., from her custody pursuant to dependency proceedings under Welfare and Institutions Code section 300, subdivision (b).[1] (Undesignated statutory references are to the Welfare and Institutions Code.) She contends on appeal (1) she was not given adequate notice of the grounds upon which Rodger was removed from her custody;

[1] Section 300 provides in part: "Any minor who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court:

". . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) The minor has suffered, or there is a substantial risk that the minor will suffer, serious physical harm or illness, as a result of the failure of his or her parent or guardian to adequately supervise or protect the minor, or the willful or negligent failure of the minor's parent or guardian to adequately supervise or protect the minor from the conduct of the custodian with whom the minor has been left, or by the willful or negligent failure of the parent or guardian to provide the minor with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the minor due to the parent's or guardian's mental illness, developmental disability, or substance abuse. . . ."

(2) the juvenile court failed to make necessary findings; (3) no substantial evidence supports the findings that Rodger's health would be endangered in her care or that alternative means to protect Rodger did not exist; (4) Rodger's maternal grandparents were improperly denied preferential consideration in determining placement; (5) the juvenile court erred in failing to appoint counsel for Rodger; (6) the visitation order is ambiguous and inadequate; and (7) the warning that her parental rights could be terminated was not repeated at the disposition hearing.

A separate respondent's brief filed on behalf of the minor takes the position that substantial evidence supports the decision to remove Rodger from his parents' custody but seeks remand to consider his best interests in determining placement.

In this published portion of the opinion, we conclude appellant received adequate notice of the grounds upon which Rodger was removed from her custody; however, remand is required to determine the appropriateness of placing Rodger with his maternal grandparents pursuant to their request. In an unpublished portion of the opinion, we reject appellant's other claims of prejudicial error.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 8, 1989, the San Joaquin County Human Services Agency (HSA) filed a petition to have the minor, Rodger H., declared a dependent of the juvenile court under section 300, subdivision (b). (Fn. 1, *ante.*) The petition, as amended at the jurisdiction hearing, alleged "the minor has suffered or there is a substantial risk that the minor will suffer serious physical harm or illness as a result of the failure or inability of his [] parent or guardian to adequately supervise or protect the minor, to wit:

"1.   A police hold was placed on [Rodger] at the request of St. Joseph Medical staff who felt the minor's parents are unable to cope with or provide for the minor's medical care;

"2.   The minor is developmentally delayed since birth and suffers from seizure disorders.

"3.   The minor was diagnosed as dehydrated and too drowsy to drink from being over medicated.

"4.   The minor's phenobarbital level was 70, higher than it should have been.

"[] It is the opinion of the St. Joseph Medical staff and Valley Mountain Regional staff that at the present time the minor's parents are unable to properly meet the minor's medical needs."

Following a detention hearing, Rodger was placed in foster care.

At the jurisdiction hearing appellant and the minor's father admitted the factual allegations contained in the petition and stipulated to a factual basis for jurisdiction.

At a contested disposition hearing, the evidence showed the following:

The minor, Rodger, who was almost two years old at the time, is severely mentally retarded due to chronic hydrocephalus and cerebral palsy. As a result of this condition, Rodger needs assistance in all facets of his life and will need similar assistance throughout his life.

Michael Wilson is a psychologist at Walton Developmental Center. Walton provided home training for appellant and Rodger's father shortly after Rodger's birth. Wilson observed appellant interact with Rodger six to eight times and believes she did not have the capability to provide Rodger with the care he needs.

Kathy Borgman is a nurse case manager at Valley Mountain Regional Center, a social service agency for the developmentally disabled. She was Rodger's case manager for about one year, during which there was difficulty getting services to Rodger. His family could not be found because they moved often and left no forwarding address. She referred Rodger's parents to crippled children's service to get special positioning equipment for Rodger, but they missed the first two appointments. Borgman tried to teach the parents to use public transportation on five occasions by giving them maps and phone numbers, but each time they lost the papers.

Borgman tried to teach the parents how to feed Rodger, because she was concerned that Rodger was not gaining weight. On several occasions Borgman found Rodger with a bottle simply propped in his mouth. The parents had difficulty giving Rodger his anticonvulsant medication and remembering how to give it to him. Both parents were referred to parenting classes but declined to attend because they did not feel they needed the classes. In Borgman's opinion, the parents had difficulty understanding Rodger's special needs and provided him with only marginal care.

Jean Wiltz is an intake specialist for Walton Developmental Center and was assigned as in-home teacher for Rodger's parents. During the 1988-

1989 school year, Ms. Wiltz went to Rodger's home once every three months. Rodger needs around-the-clock care and monitoring of his nutritional needs. The parents were taught "rolling" and "positioning" exercises to increase Rodger's sensory stimulation. They were also instructed in feeding him. They were willing to accept the training, but had difficulty performing the exercises because Rodger would protest. Rodger did not make any progress and, in Wiltz's opinion, regressed during this time.

Ramona Cortez is an outreach assistant at Walton Developmental Center. She worked with Rodger from May 30, 1988, to February 13, 1990. She visited Rodger's home once a week and worked with Rodger and appellant on positioning, rolling, feeding, sensory and motor skills. Appellant would have difficulty performing the exercises as demonstrated and would not follow Cortez's instructions. Cortez reported that, in the four months since Rodger was removed from his parents' custody, he has gained over four pounds and has improved functioning.

The substance of the above testimony is also contained in the social study prepared by the social worker.

Appellant and Rodger's father testified they love Rodger and would cooperate in any way to get him back. They denied any problem in feeding Rodger. They explained the overmedication as a misunderstanding of the doctor's instructions, and appellant declined the parenting classes because she thought they were merely a support group.

At the end of the disposition hearing, the court determined that custody of Rodger be taken from his parents and awarded to HSA, concluding, "his needs are such that it [sic] is not being met and has not been met."

## DISCUSSION

I. *Appellant Received Adequate Notice of the Grounds Upon Which Rodger Was Removed From Her Home*

In her opening brief, appellant argues in relevant part as follows:

"I. THE MATTER SHOULD BE REVERSED BECAUSE [APPELLANT] WAS NOT GIVEN ADEQUATE NOTICE OF THE GROUNDS UPON WHICH THE PETITION WAS SUSTAINED.

■ "The petition in the instant case alleged that there was a substantial risk to Rodger because: medical staff felt the parents were unable to provide for Rodger's medical needs and care; Rodger was developmentally

delayed; Rodger had been over-medicated; and his phenobarbital level was higher than it should have been. . . . The petition did not allege that the parents' problems in transportation, housing, or understanding Rodger's needs were of such a nature as to cause removal. Nevertheless, much of the testimony and the court's decision centered on precisely those areas: that the parents did not understand Rodger's needs, and had inadequate housing and transportation."

It is apparent to us that in her opening brief, appellant has confused the roles of the jurisdiction and disposition hearings.

The allegations of the petition are adjudicated at a jurisdiction hearing, where "the court shall . . . consider only the question whether the minor is a person described by Section 300, . . ." (§ 355; rules 1449-1450, Cal. Rules of Court; see 2 Cal. Juvenile Court Practice (Cont.Ed.Bar 1981) § 18.1, pp. 92-94.) In this case, the petition was sustained at the jurisdiction hearing because appellant and Rodger's father admitted the allegations of the petition. Having admitted the allegations of the petition without objection, appellant has waived any objection to the petition on the ground it afforded inadequate notice of facts to be adduced at the jurisdiction hearing. (*In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 836 [269 Cal.Rptr. 624].)

In her reply brief, appellant appears to recognize that her argument is aimed at the disposition hearing. Section 358 provides in pertinent part, "After finding that a minor is a person described in Section 300, the court shall hear evidence on the question of the proper disposition to be made of the minor." (§ 358, subd. (a); rule 1455, Cal. Rules of Court.) In essence, appellant contends the trial court removed Rodger from her home for reasons that were unrelated to the grounds pleaded in the petition and sustained at the jurisdiction hearing. She alleges this reliance on new evidence violated her constitutional right to due process notice and her statutory right to have a subsequent petition filed under section 342.[2]

■ Appellant correctly notes, "Notice of the specific facts upon which removal of a child from parental custody is predicated is fundamental to due process. [Citations.] Notice of the specific facts upon which the petition is based is necessary to enable the parties to properly meet the charges." (*In*

---

[2] Section 342 provides: "In any case in which a minor has been found to be a person described by Section 300 and the petitioner alleges new facts or circumstances, other than those under which the original petition was sustained, sufficient to state that the minor is a person described in Section 300, the petitioner shall file a subsequent petition. This section does not apply if the jurisdiction of the juvenile court has been terminated prior to the new allegations. [¶] All procedures and hearings required for an original petition are applicable to a subsequent petition filed under this section."

re *Jeremy C.* (1980) 109 Cal.App.3d 384, 397 [167 Cal.Rptr. 283]; see *In re Stephen W.* (1990) 221 Cal.App.3d 629, 640 [271 Cal.Rptr. 319]; *In re Neal D.* (1972) 23 Cal.App.3d 1045, 1048 [100 Cal.Rptr. 706].)

■ Appellant places principal reliance upon *In re Neal D., supra,* 23 Cal.App.3d 1045, reversed on other grounds in *In re B. G.* (1974) 11 Cal.3d 679, 691, footnote 15 [114 Cal.Rptr. 444, 523 P.2d 244]. There, a jurisdictional finding of dependency was based upon the mother's maintenance of an unsuitable home because the residence had been condemned. The mother found a suitable home and moved to terminate jurisdiction under section 778. However, a social worker's report, filed in opposition to the mother's motion, "did not dwell upon the suitability of the home, that is, the jurisdictional facts upon which the original order was based; rather, the . . . report dealt with completely new circumstances. Physical, mental, emotional and social problems, none of which were considered in the original hearing, were related in the welfare department's subsequent report." (*Id.* at p. 1048.) The court concluded the mother had been denied due process because the mother had not received adequate notice of the grounds upon which the minor was removed from the home. (*Id.* at pp. 1048-1049.) In the court's view, a supplemental petition, alleging the completely new conduct, should have been filed. (*Id.* at p. 1050.)

*Neal D.* is distinguishable from this case because here the ultimate fact found by the court at the disposition hearing, and justifying removal from parental custody, was the inability of the parents adequately to provide for Rodger's medical needs. That ultimate fact had been squarely put at issue by allegations of the petition that professional staff were of the opinion that Rodger's parents were unable properly to care for the minor's medical needs.

The facts adduced at the disposition hearing, and challenged by appellant, were facts merely tending to explain the ultimate fact upon which custody of the child was removed from the parents. Thus, whether the parents could understand Rodger's medical needs tended to explain why they were unable to properly meet those needs. Similarly, the transportation problems affected Rodger's medical needs because his parents were unable to get him to medical appointments. The housing situation had a similar effect, because the family's frequent moves without a forwarding address made it difficult for the social service agencies to follow up on Rodger's needs.

HSA did not have to file another petition before adducing those facts at the disposition hearing. We think that, whether the issue is constitutional due process or statutory procedures mandated by section 342, a supplemen-

tal or "subsequent" petition is required only where a dispositional order removing a child from parental custody may be premised upon "completely new" conduct or circumstances that are wholly unrelated to the conduct or circumstances alleged in the sustained petition. Conversely, where the conduct or circumstances shown at the disposition hearing tend to explain the conduct or circumstances alleged in the sustained petition, the conduct or circumstances are not "new" and no new petition need be filed. Due process is satisfied if the child is removed from parental custody on the basis of the same ultimate fact(s) as have been alleged in a sustained petition.

A contrary rule would be without precedent and would greatly disrupt the conduct of disposition hearings. ■ "The dispositional phase of dependency proceedings is akin to the sentencing phase of criminal proceedings. [Citation.]" (*In re Jennifer V.* (1988) 197 Cal.App.3d 1206, 1209 [243 Cal.Rptr. 441].) "At the disposition hearing, the court must decide where the minor will live." (*In re Tasman B.* (1989) 210 Cal.App.3d 927, 931 [258 Cal.Rptr. 716].) The court's principal concern is a disposition consistent with the best interests of the minor. (*Ibid.*; *In re Cheryl H.* (1984) 153 Cal.App.3d 1098, 1112 [200 Cal.Rptr. 789].) To that end, the juvenile court is directed: "Before determining the appropriate disposition, the court shall receive in evidence the social study of the minor made by the probation officer, any study or evaluation made by a child advocate appointed by the court, and such other relevant and material evidence as may be offered." (§ 358, subd. (b).) This statutory command envisions that the juvenile court will be provided with a broad spectrum of evidence shedding light on the circumstances of the minor and his or her family. (See *In re Tasman B., supra,* 210 Cal.App.3d at pp. 933-934.) Of necessity, in virtually every case, the court will have before it conduct or circumstances of family members not pleaded in the petition. Thus, for example a petition may have alleged child abuse; the social study may report a problem with an alcoholic parent. The petition may allege a minor was abandoned without sufficient food or clothing; the social study may report parental drug abuse. And so forth. No authority suggests that these common facts of family history and behavior, that shed light on the charged conduct alleged in a sustained petition, must be expressly pleaded before they may be shown at a disposition hearing.

■ In the instant case, as we have noted, the evidence adduced at the disposition hearing that appellant claims is "new" in fact merely tends to explain the conduct alleged in the petition and admitted by the parents. Since the conduct or circumstances challenged by appellant all tended to explain the conduct and circumstances alleged in the sustained petition, they were not "new" and neither the Constitution nor section 342 required the filing of another petition.

Even assuming for the sake of argument appellant was entitled to due process notice of the facts and circumstances to be presented at the disposition hearing, we conclude appellant received fair notice from her receipt of the social study, which contained a description of substantially all the evidence later adduced at the disposition hearing. That study, filed February 15, 1990, states that copies were provided to all parties. The disposition hearing, originally scheduled for February 20, 1990, was continued to March 8, 1990. Appellant therefore had ample notice of the evidence and issues to be addressed at the hearing.

II., III.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

IV. *Placement With Grandparents*

At the jurisdiction hearing, Rodger's maternal grandmother stated: "Excuse me, Your Honor, is it possible to get an attorney appointed for my husband and myself—so we can try to get little Rodger until he goes back to his parents." The court responded: "No, I don't appoint counsel. But if you and your husband are someone that can adequately and properly care for him, you have that right. [¶] The law says as far as people whom the child can be released to, the ones that have preference are grandparents, adult brothers and sisters, and would be the—basically I think it's aunts and uncles at the dispo. So you obviously fall in that category. [¶] The main thing is if you can properly take care of meeting Rodger's special medical needs, and that should be something you should address with Mr. Cortes [the social worker] and also with Valley Mountain Regional people, okay?" The grandmother answered: "All right. Thank you."

Appellant argues the court erroneously failed to give the grandparents preferential consideration for placement under section 361.3, which provides in pertinent part: "(a) In any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative. In determining whether such a placement is appropriate, the probation officer and court shall consider the ability of the relative to provide a secure and stable environment for the child. Factors to be considered in that assessment include, but are not limited to, the good moral character of the relative; the ability of the relative to exercise proper and effective care and control of the child; the ability of

---

* See footnote, *ante*, page 1174.

the relative to provide a home and the necessities of life for the child; which relative is most likely to protect the child from his or her parents; which relative is most likely to facilitate visitation with the child's other relatives and to facilitate reunification efforts with the parents; and the best interests of the child. . . .

". . . . . . . . . . . . . . . . . . . .

"(c) For purposes of this section: [¶] (1) 'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated. [¶] (2) 'Relative' means an adult who is a grandparent, aunt, uncle, or sibling."

The record fails to show the social worker ever investigated whether placement of Rodger with his grandparents was appropriate. The only reference to the grandparents in the social worker's social study is: "The maternal grandparents have visited the minor and last saw him several months ago." The social study does not reflect that the social worker had any contact with the grandparents or discussed possible placement with them.

HSA concedes section 361.3 requires that it investigate placement with a grandparent *who so requests* but contends the grandmother's exchange with the court was insufficient to constitute a "request" under section 361.3.

The statute does not say how a request shall be made. However, we think a timely request for placement, made in open court, is sufficient to trigger the investigation and evaluation required by section 361.3. Here, although the grandparents' request for placement was contained in a request for counsel, the court clearly understood the grandparents wanted Rodger placed with them. In short, they made a sufficient request for placement under section 361.3. On this point, *In re Baby Girl D.* (1989) 208 Cal.App.3d 1489 [257 Cal.Rptr. 1] is distinguishable. There, the court suggested in dictum that a request for placement by a relative came too late when first advanced at a permanency planning hearing following a disposition hearing. (*Id.* at p. 1494.) Here, the request came before the disposition hearing.

Nor do we think the grandparents waived their request by apparently failing to contact the social worker following the jurisdiction hearing. " 'Waiver requires a voluntary act, knowingly done, with sufficient awareness of the relevant circumstances and likely consequences. [Citation.] There must be actual or constructive knowledge of the existence of the right to which the person is entitled. [Citation.]' (*In re Marriage of Moore* (1980)

113 Cal.App.3d 22, 27 [169 Cal.Rptr. 619].) There must be '. . . an actual intention to relinquish it or conduct so inconsistent with the intent to enforce that right in question as to induce a reasonable belief that it has been relinquished.' (*Outboard Marine Corp.* v. *Superior Court* (1975) 52 Cal.App.3d 30, 41 [124 Cal.Rptr. 852].)" (*In re Marriage of Perkal* (1988) 203 Cal.App.3d 1198, 1203 [250 Cal.Rptr. 296].) This court has recognized that " 'Courts examine the defense of waiver carefully in order to ensure the protection of a party's rights, especially when these rights are statutorily based.' " (*Independent Union of Pub. Service Employees* v. *County of Sacramento* (1983) 147 Cal.App.3d 482, 488 [195 Cal.Rptr. 206], quoting *Oakland Unified School Dist.* v. *Public Employment Relations Bd.* (1981) 120 Cal.App.3d 1007, 1011 [175 Cal.Rptr. 105].) ██ We are particularly cautious to find a waiver by the grandparents of the right to have placement investigated, because the investigation is ultimately in the best interests of the minor. ██ "A relative, who presumably has a broader interest in family unity, is more likely than a stranger to be supportive of the parent-child relationship and less likely to develop a conflicting emotional bond with the child." (*In re Baby Girl D., supra,* 208 Cal.App.3d at p. 1493.)

██ Here, viewed as a whole, the record fails to show the grandparents knowingly waived their request for placement. The juvenile court did not clearly instruct the grandparents to *initiate* contact with the social worker; rather, the court's instruction to the grandmother was that Rodger's special needs "should be something you should address with Mr. Cortes . . . ." At the time, Mr. Cortes was not in the courtroom. Nor does the record show that the grandparents ever received notice of the disposition hearing, which they did not attend.

We conclude the grandparents made a valid request for placement of Rodger with them and that they did not knowingly waive their request. The disposition order must be vacated and the matter remanded to the juvenile court for the limited purpose of investigating and considering the grandparents' request for placement. (§ 361.3.)

V., VI.*

. . . . . . . . . . . . . . . . . . .

## DISPOSITION

The disposition order is vacated. The matter is remanded to the juvenile court for the limited purpose of determining the appropriateness of placing

---

* See footnote, *ante,* page 1174.

the minor with his maternal grandparents. In all other respects, the judgment (order) is affirmed.

Marler, J., and Scotland, J., concurred.