[No. C021332. Third Dist. Apr. 16, 1996.]

In re LUKE L. et al., Persons Coming Under the Juvenile Court Law.
BUTTE COUNTY CHILDREN'S SERVICES DIVISION, Plaintiff and
Respondent, v.
ARLEEN L., Defendant and Appellant.

COUNSEL

Kimball J. P. Sargeant for Defendant and Appellant.

Robert A. Glusman and Susan Minasian for Plaintiff and Respondent.

OPINION

NICHOLSON, J.—This appeal considers the dilemma which a juvenile court in a dependency proceeding must confront when presented with requests to place minors so far away from their parent that reunification will be rendered difficult if not impossible.

Arleen L., the mother of the minors, appeals from a juvenile court order authorizing a visit in Illinois between Rasa-Lila (Christina)[1] and her cousins and placing Christina there, and from orders placing Luke and Tulasi with their aunt and uncle in Southern California.[2] (Welf. & Inst. Code, § 395; further unspecified section references are to that code.)

Appellant contends the juvenile court abused its discretion in authorizing the placement of Christina in Illinois and Luke and Tulasi in Southern

---

[1] Rasa-Lila also is known as Christina. We will refer to her as Christina throughout this opinion.

[2] Appellant's notice of appeal refers only to the order placing Luke and Tulasi in Southern California. Under the circumstances and in the interests of justice, we construe the appeal also to seek review of the earlier order as to Christina. (Cf. Cal. Rules of Court, rule 1(a).)

California during the reunification period. Appellant also claims the placement order as to Christina violated the Interstate Compact on Placement of Children (ICPC). (Fam. Code, § 7900 et seq.) We agree with both of those contentions and reverse.

FACTUAL AND PROCEDURAL BACKGROUND[3]

On December 11, 1992, petitions filed pursuant to section 300, subdivision (b) alleged six-year-old Luke, four-year-old Tulasi, and eleven-year-old Christina resided in an inadequate and unhealthy home, Luke had been physically abused by an adult male individual in the home, and Tulasi was found in a vehicle with an intoxicated adult male. After conducting a contested jurisdiction hearing, the juvenile court sustained the petitions.

According to the January 1993 report of the social worker prepared in connection with the disposition hearing, appellant had an extensive history of previous involvements with child welfare agencies in other states. Moreover, the report noted, since June 1990, respondent children's services division (CSD) had received 20 referrals concerning the minors. The report described the minors as "bright, intelligent children." However, the social worker opined, the minors remained at risk while in appellant's care.

The report acknowledged that appellant "loves and cares about" the minors. However, the social worker believed appellant does not "seem to comprehend how her inactions and actions seriously compromise the health and safety of her children." Suggesting "this chronic type of neglect" may be attributable to substance abuse or mental health problems, the social worker recommended psychological and drug evaluations. The social worker also recommended the minors be declared dependents and removed from the custody of appellant.

According to a psychological report submitted to the juvenile court, appellant suffered from an antisocial personality disorder.

After the disposition hearing, the juvenile court adjudged the minors dependents of the court and ordered them removed from appellant's custody. The court directed CSD to provide appellant with reunification services. The court also ordered appellant to submit to psychological and substance abuse evaluations.

---

[3]Some of the discussion which follows derives from our opinion in In re Luke L. ((Apr. 1, 1994) C015674 [nonpub. opn.]) of which we take judicial notice. (Evid. Code, § 451, subd. (a).) In that appeal, this court reversed the dispositional order of removal of the minors from appellant's custody.

On July 19, 1994, subsequent petitions filed on behalf of the minors pursuant to subdivision (b) of section 300 alleged the minors had suffered, or there was a substantial risk they would suffer, serious physical harm or illness, as a result of appellant's failure or inability to supervise or protect the minors adequately, and by the inability of appellant to provide regular care for the minors due to her mental illness, developmental disability, or substance abuse. In support of those allegations, the petitions claimed appellant suffered "emotional dysfunction" and "cognitive limitations," which limit her ability to parent the minors adequately. The petitions also averred appellant failed to participate or make progress in services designed to improve her parenting abilities.

At the combined jurisdiction hearing on the subsequent petitions and disposition hearing on the original and subsequent petitions, clinical psychologist Ladd McDonald testified he had prepared a neuropsychological evaluation of appellant. McDonald met with appellant several times. The purpose of their meetings was for McDonald to evaluate appellant's parenting abilities. Besides administering numerous tests to appellant, McDonald reviewed her history as found in court documents and a previous evaluation, spoke with three individuals familiar with appellant's parenting skills, and observed appellant during a visit with the minors.

Test results disclosed appellant's parenting skills were "impaired." Moreover, McDonald did not believe appellant could benefit from services. According to McDonald, appellant's capacity both for self-awareness and awareness of her environment was "moderately impaired." Appellant's short-term memory was "moderately to severely impaired," as was her ability to execute goal-directed behavior. McDonald described appellant's cognitive processing capacity as "very slow." The psychologist also believed appellant had difficulty "learning from experience and adapting to new and changing circumstances."

Based on the tests, appellant's history, and his observations, McDonald opined that appellant suffered from a "mixed personality disorder." She was not suffering from a mental illness. Moreover, the psychologist's diagnosis by itself did not mean appellant was incapable of parenting. Nonetheless, McDonald believed appellant was unable to be an adequate parent. He told the juvenile court that due to her personality disorder, the minors would be subject to a multitude of risks in appellant's custody.

McDonald acknowledged he based his conclusions in part on appellant's reported history. Although he termed that history "significant," McDonald also stated it was only one among a number of different sources of information. McDonald admitted a different history "might" have led to a different

conclusion. However, the psychologist also stated that, based on the other data available, his conclusion appellant was incapable of parenting would remain the same. He believed the historical information served to strengthen findings derived from the other data.

Social worker Judith Sager had counseled appellant and observed her during visits with the minors. Sager did not believe appellant was able to consistently meet basic needs of the minors. Sager's biggest concern was appellant's ability to protect herself and the minors from strangers. Sager also thought appellant had a difficult time putting into practice what she had learned about parenting. Sager acknowledged appellant's residence was in adequate condition.

After the combined hearing, the juvenile court sustained the subsequent petitions, ordered the minors continued as dependent children, and ordered their removal from parental custody continued.

On February 13, 1995, CSD sent a request to Illinois, pursuant to the ICPC, for an evaluation of a possible placement of Christina with her cousins. According to the social worker, as of May 2, 1995, Illinois authorities had not yet completed the evaluation. In the meantime, Los Angeles County authorities had completed a home evaluation in connection with the placement of Luke and Tulasi with their aunt and uncle in Sunland. The social worker opined that placement of Luke and Tulasi in Sunland was in their best interests.

At a May 4, 1995, hearing, counsel for appellant objected to placement of Christina in Illinois and Luke and Tulasi in Southern California. Noting reunification was continuing, counsel suggested it would be difficult for appellant to maintain contact if the minors were so far away. After appellant appeared to change her mind about Christina's proposed placement, the juvenile court ordered her placed in Illinois, pending completion of the ICPC. The court also authorized a visit for Christina in Illinois. The court made no placement order as to Luke and Tulasi at that time.

At a June 15, 1995, hearing, counsel for the minors requested placement of Luke and Tulasi in Southern California. Referring to appellant's concern about visitation, counsel advised the juvenile court CSD had agreed to arrange for transportation of appellant to Southern California and for the minors to visit appellant in Butte County. According to counsel for CSD, for appellant's twice monthly visits CSD would furnish her with a round-trip bus ticket, as well as funds for lodging and meals. CSD also would permit telephone calls and correspondence.

Arguing "it would hamper reunification tremendously," counsel for appellant again objected to the proposed placement of Luke and Tulasi. According to counsel, appellant did not believe even the two hours weekly visitation she then had was sufficient. Counsel also again questioned the propriety of sending Christina to Illinois, citing the impact of that placement on another child of appellant, who had remained in her custody.

The juvenile court granted the request for authorization of placement of Luke and Tulasi in Southern California. This appeal followed.

DISCUSSION

I

■ Appellant contends the juvenile court abused its discretion in ordering Christina placed in Illinois and Luke and Tulasi placed in Southern California during the reunification period. By rendering those orders, appellant asserts the court "effectively thwarted reunification efforts between appellant and her children . . . ." According to appellant, the court's orders violated section 361.3 and Family Code section 7950.

At the time of this proceeding, the version in effect of section 361.2, subdivision (d), provided: "When the court orders removal pursuant to Section 361, the court shall order the care, custody, control, and conduct of the minor to be under the supervision of the probation officer who may place the minor in any of the following: [¶] (1) The home of a relative, including a noncustodial parent."

Section 361.3 provides in part: "(a) In any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative. In determining whether placement with a relative is appropriate, the county social worker and court shall consider, but shall not be limited to, consideration of the following factors: [¶] (1) The best interests of the child, including special physical, psychological, or emotional needs. [¶] (2) The wishes of the parent. [¶] (3) The provisions of Part 6 (commencing with Section 7950) of Division 12 of the Family Code regarding relative placement. [¶] (4) Placement of siblings and half-siblings in the same home, if such a placement is found to be in the best interest of each of the children. [¶] (5) The good moral character of the relative. [¶] (6) The ability of the relative to do the following: [¶] (A) Provide a secure and stable environment for the child. [¶] (B) Exercise proper and effective care and control of the child. [¶] (C) Provide a home

and the necessities of life for the child. [¶] (D) Protect the child from his or her parents. [¶] (E) Facilitate court-ordered reunification efforts with the parents. [¶] (F) Facilitate visitation with the child's other relatives. [¶] . . . [¶] (c) For purposes of this section: [¶] (1) 'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated. [¶] (2) 'Relative' means an adult who is a grandparent, aunt, uncle, or sibling."

Subdivision (b) of section 361.2 applies at the disposition phase, when the minor may be removed from parental custody. (§ 361.) ■ "The object of dispositional hearings is to find a temporary caretaker who will meet the child's physical and psychological needs while cooperating in reunification efforts. A relative, who presumably has a broader interest in family unity, is more likely than a stranger to be supportive of the parent-child relationship and less likely to develop a conflicting emotional bond with the child." (*In re Baby Girl D.* (1989) 208 Cal.App.3d 1489, 1493 [257 Cal.Rptr. 1].) Under section 361.3, it is proper to consider relatives for placement even after disposition, so long as reunification efforts are ongoing. (*In re Jessica Z.* (1990) 225 Cal.App.3d 1089, 1098-1100 [275 Cal.Rptr. 323].)

Among the factors under section 361.3 which the juvenile court must consider are the provisions contained in the Family Code. The version of section 7950 of the Family Code in effect at the time of this proceeding provided in part as follows: "(a) *With full consideration for the proximity of the natural parents to the placement so as to facilitate visitation and family reunification,* when a child is being considered for placement in foster care, the following order of placement preference . . . shall be used[:] . . . [¶] (1) Placement shall, if possible, be made in the home of a relative. Diligent efforts shall be made to locate an appropriate relative. . . ." (Italics added.)

■ It is difficult, if not impossible, to exaggerate the importance of reunification in the dependency system. With but few exceptions, whenever a minor is removed from parental custody, the juvenile court is required to provide services to the parent for the purpose of facilitating reunification of the family. (§ 361.5.) Each reunification plan must be appropriate to the parent's circumstances. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545 [3 Cal.Rptr.2d 217].) The plan should be specific and internally consistent, with the overall goal of resumption of a family relationship. (*In re Mario C.* (1990) 226 Cal.App.3d 599, 603-604 [276 Cal.Rptr. 548]; *In re Jamie M.* (1982) 134 Cal.App.3d 530, 545 [184 Cal.Rptr. 778].) The agency must make reasonable efforts to provide suitable services, "in spite of the difficulties of doing so or the prospects of success." (*In re Dino E.* (1992) 6 Cal.App.4th 1768, 1777 [8 Cal.Rptr.2d 416].)

Among its components, the reunification plan must include visitation. (§ 362.1.) That visitation must be as frequent as possible, consistent with the well-being of the minor. (*Ibid.*) Absent a showing of detriment caused by visitation, ordinarily it is improper to suspend or halt visits even after the end of the reunification period. (§ 366.21, subd. (h); *In re David D.* (1994) 28 Cal.App.4th 941, 953-956 [33 Cal.Rptr.2d 861].) Visitation may be seen as an element critical to promotion of the parents' interest in the care and management of their children, even if actual physical custody is not the outcome. (*In re Monica C.* (1995) 31 Cal.App.4th 296, 308-310 [36 Cal.Rptr.2d 910].)

■ Reunification is not without its limits or conditions. In order to promote the best interests of dependent minors, the Legislature has set time limits during which reunification can be sought. (§ 361.5, subd. (a); *In re Zacharia D.* (1993) 6 Cal.4th 435, 446 [24 Cal.Rptr.2d 751, 862 P.2d 751].) In establishing such conditions, ". . . the Legislature balanced numerous competing fundamental interests, including the child's compelling interest in 'a placement that is stable, permanent, and which allows the caretaker to make a full emotional commitment to the child,' the parents' compelling 'interest in the companionship, care, custody and management' of their child (*In re Marilyn H.* [1993] 5 Cal.4th [295,] 306) [19 Cal.Rptr.2d 544, 851 P.2d 826], and the 'preservation of the family whenever possible . . . .' (§ 300, subd. (j).)" (*In re Matthew C.* (1993) 6 Cal.4th 386, 400 [24 Cal.Rptr.2d 765, 862 P.2d 765].)

■ In light of the above principles, we examine the circumstances of this case. First, we note, although it is evident appellant suffers from various difficulties, CSD has provided her with reunification services throughout this proceeding. Those services have included visitation with the minors. According to the most recent report in the record, appellant attended nearly all of the scheduled visits with the minors, "even when her only transportation has been to ride across town on her bicycle." Although that report concluded appellant was unable to provide for the minors' needs on a consistent basis, it acknowledged appellant wanted to do whatever was necessary to achieve reunification.

Along with the goal of reunification, the statutory framework related to dependency also emphasizes the importance of stable, permanent placements of the minors involved. One form of placement, that with a relative, is "preferred" under the law. If a request for placement is made by a relative of the minor, then the agency must accord "preferential consideration" to that request. (§ 361.3, subd. (a).)

■ In appropriate cases, the juvenile court must apply the "relative placement preference" contained in section 361.3. However, as the Legislature has made clear, in considering that preference, the court does not

operate in a vacuum. For example, the statute requires according preferential *consideration* to a relative's request for placement, rather than simply granting the request on a specified showing. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 320, 321 [27 Cal.Rptr.2d 595, 867 P.2d 706].)

Subdivision (a) of section 361.3 lists a panoply of criteria which the agency and the court must consider when faced with a request for placement with a relative. Interestingly, included among those factors are the following: the proximity of the parents to the placement (§ 361.3, subd. (a)(3)), and the ability of the relative to "[f]acilitate court-ordered reunification efforts with the parents" (§ 361.3, subd. (a)(6)(E)), which presumably would include visitation. It also is noteworthy that ordinarily relative placements are temporary arrangements. (*In re Monica C., supra,* 31 Cal.App.4th at p. 309; but see § 366.26, subd. (c)(4).)

From our examination of the provisions related to reunification and those statutes concerning placement with relatives, it is plain that the task of the juvenile court when presented with circumstances similar to those found in this case is a difficult and sensitive one. The court must balance the right of the parent to attempt reunification with the minor's interest in a beneficial placement, whether temporary or not, in the home of a relative. There may be situations where the relative placement preference must give way to the pursuit of reunification.

■ As we have suggested, this case is a troublesome one. However, we are convinced that, under all of the circumstances presented, the placement decisions made by the juvenile court were an abuse of its discretion. (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1060 [24 Cal.Rptr.2d 654].) First, as to the order tentatively placing Christina with cousins in Illinois, the preference for relative placement does not even apply. Under the statute, only aunts, uncles, siblings, or grandparents qualify as "relatives." (§ 361.3, subd. (c)(2).) Moreover, as we decide in part II of this opinion, the court's order violated the ICPC. Finally, in light of the principles we have discussed above, to place Christina in another, distant state while reunification remains at least a possibility and the other siblings reside in California is not in either appellant's interest or in the best interests of the minors.

The order placing Luke and Tulasi in Southern California is more problematical. The aunt and uncle there *do* qualify as relatives under the statute. (§ 361.3, subd. (c)(2).) Furthermore, the social worker concluded, and it can be inferred the juvenile court found, that placement of Luke and Tulasi with their relatives was in the best interests of the minors. It is that principle—the minors' best interests—which underlies the decision the court must make under section 361.3. (*In re Robert L., supra,* 21 Cal.App.4th at p. 1068.)

As we have noted, appellant has attempted to achieve reunification with the minors by visiting them regularly. As recently as May 1995, CSD recommended, and the juvenile court agreed, that reunification continue. We agree with appellant that, under these circumstances, placing Luke and Tulasi hundreds of miles away from appellant "would effectively doom visitation between appellant and her children . . . ."

We do not concur with the position of CSD that its plan to provide funds for the bus, lodging, and meals twice monthly will ensure appellant would continue to have a reasonable opportunity to achieve reunification with Luke and Tulasi. It is indisputable the result of such an arrangement would require many long hours in transit by bus and be a substantial reduction in the amount of actual time appellant would receive for visitation. Finally, we question the practicality of transporting the minors from Los Angeles County to Butte County for visits with appellant, as CSD proposed. Such a proposed arrangement appears to be an unrealistic one here.

We do not minimize the importance of placing dependent minors with relatives. The law requires consideration of such placements under appropriate circumstances. However, in light of the primacy accorded reunification in the dependency system, it is incumbent upon the juvenile court, especially when presented with difficult situations such as that found in this case, to ensure a parent has a reasonable opportunity to pursue reunification. That is especially true in light of former Family Code section 7950, subdivision (a), which required the trial court to give full consideration to the proximity of appellant to her children so as to facilitate her visitation and potential success with reunification. If appellant does not succeed and the reunification period ends, the court retains the discretion to consider placement with an appropriate relative.

## II

Appellant also claims the juvenile court erred in authorizing a "visit" between Christina and her cousins in Illinois. According to appellant, in essence the authorization amounted to a placement order. Absent completion of the ICPC, appellant argues the order was improper. Citing *In re Eli F.* (1989) 212 Cal.App.3d 228 [260 Cal.Rptr. 453], appellant notes the court had no information before it with which to justify such a placement.

The ICPC is an agreement, entered into by California and other jurisdictions, which governs the "sending, bringing or causing any child to be sent or brought into a receiving state for placement in foster care or as a preliminary to a possible adoption . . . ." (Fam. Code, § 7901, art. 3, subd.

(b).) This language "limits the ICPC to foster care and possible adoption— neither of which would involve natural parents." (*Tara S.* v. *Superior Court* (1993) 13 Cal.App.4th 1834, 1837 [17 Cal.Rptr.2d 315].) Here, it is apparent, and the parties do not dispute, that Christina's placement in Illinois constitutes "placement in foster care" or "a preliminary to a possible adoption." Accordingly, the ICPC applies to this case.

The ICPC prohibits sending a minor into the receiving state "until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child." (Fam. Code, § 7901, art. 3, subd. (d).) Here, the "receiving state" is Illinois and the "sending agency" is CSD. (Fam. Code, § 7901, art. 2, subds. (b) and (c).) The ICPC also provides for sanctions if its provisions are violated. (Fam. Code, § 7901, art. 4.)

In *In re Eli F.*, *supra*, this court held that an order placing a minor with an aunt in Alabama violated the ICPC. The record there provided no information about the aunt and her ability to provide care for the minor. Under those circumstances, we reversed the placement order. (212 Cal.App.3d at pp. 237-240.)

CSD argues the juvenile court did not order a placement of Christina. Instead, according to CSD, the court merely authorized a visit in Illinois. We disagree. Had the court confined its orders to a visit only, we would be inclined to agree with CSD that no ICPC issue is presented. (See *Tara S.* v. *Superior Court*, *supra*, 13 Cal.App.4th at p. 1838, fn. 1.) By its terms, the ICPC applies only to a *placement*. (Fam. Code, § 7901, art. 3, subd. (a); but see Fam. Code, § 7901, art. 3, subd. (d).)

The record reflects the juvenile court rendered two orders. From the reporter's transcript of the May 4, 1995 hearing, it is clear the court made a placement order. At the urging of counsel for CSD, the court made its order contingent on completion of the ICPC. At the end of the hearing, counsel for the minors suggested an additional order authorizing a visit. The court then rendered that order as well.

The ICPC does not permit contingent or conditional placement orders. Accordingly, the juvenile court erred when it made such an order in this case. At the conclusion of Christina's visit, she should have returned to Butte County.

### DISPOSITION

The orders placing Christina in Illinois and Luke and Tulasi in Southern California are reversed. The matter is remanded to the juvenile court for

further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

Sims, Acting P. J., and Brown, J., concurred.