[No. H006875. Sixth Dist. Nov. 29, 1990.]

In re JESSICA Z., a Person Coming Under the Juvenile Court Law. DARDELL McFARLIN, as Director, etc., Plaintiff and Respondent, v. IRENE P., Defendant and Appellant.

[No. H007125. Sixth Dist. Nov. 29, 1990.]

In re JESSICA Z., a Minor, on Habeas Corpus.

**COUNSEL**

Diane Schneider, under appointment by the Court of Appeal, for Defendant and Appellant.

Ralph R. Kuchler and J. Michael Hogan, County Counsel, for Plaintiff and Respondent.

**OPINION**

**ELIA, J.**—Jessica Z., daughter of appellant Irene P., was adjudicated a dependent of the juvenile court under Welfare and Institutions Code section

300, subdivision (b).[1] Appellant has appealed from an order following a 12-month review hearing which continued her daughter in foster care.

The contentions she advances on appeal are these: First, that the juvenile court had a duty, pursuant to section 361.3, to accord preference to Jessica's relatives at this hearing, and that Jessica should have been placed in the care of her maternal grandmother or aunt instead of having been continued in foster care; and second, that she was afforded ineffective assistance of counsel by her attorney's failure to urge appellant's claim for relative placement at this, or at the previous, hearing.

Appellant's ineffective assistance of counsel claim also forms the basis for a petition for a writ of habeas corpus. We ordered that the petition be considered with the appeal.

While we agree with appellant that section 361.3 was honored here more in the breach than in the observance, we will affirm the trial court's order for reasons we will explain. As to the writ petition, we conclude appellant has failed to make a cognizable claim on this record. We will therefore deny the petition.

### Factual and Procedural Background

Appellant Irene P. has six minor children, none of whom live with her. The youngest and the subject of this appeal is Jessica, who was born on December 17, 1988, with drug withdrawal symptoms. Early the following morning, appellant and Jessica left the hospital and were found hiding in front of a vehicle parked behind a motel; Jessica was inadequately dressed. Jessica was then removed to protective custody.

A petition was filed on December 20, 1988, alleging that Jessica came within the provisions of section 300, subdivisions (a) and (d). In addition to allegations that Jessica had been born with drug withdrawal symptoms, the petition recited appellant's history of severe drug abuse, and the circumstances of Jessica's removal from the hospital. It also alleged that appellant had agreed, but had failed, to remain drug-free.

Grounds for Jessica's continued detention were found at a detention hearing on December 21. Counsel was appointed to represent appellant on December 22.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

An amended petition was filed on January 4, 1989, alleging that there were grounds for dependency under section 300, subdivision (b). In addition to the previous allegations, this petition alleged that appellant was presently abusing drugs, and that this impaired "her judgment and her ability to provide proper care for" Jessica.

At a jurisdictional hearing on January 10, 1989, appellant did not contest the amended petition, and the court found its allegations true.

Jessica was placed in her present foster home on January 27, 1989, when she was 41 days old. Her foster parents, who have five sons of their own and are also foster parents to a nine-year-old child, wish to adopt her.

At a dispositional hearing on January 31, 1989, the court adjudicated Jessica a dependent of the juvenile court, and ordered her continued in foster placement. It appears that appellant did not attend, and that no witnesses testified at this hearing.

A six-month review hearing for Jessica and her half-brothers Joel and Paul Z. was held on July 11, 1989. The social worker's report submitted for this hearing indicated that appellant had a history of severe drug abuse. Her sons Joel and Paul Z., then aged four and eight, were currently living with their maternal aunt, Ida P. Jessica's twin half-sisters, Angelina and Angelica C., then 10, were living with their father; a third half-brother, Frank Z., then 13, was living with his maternal grandmother.

The report also indicated that Jessica was thriving in foster care, that appellant's whereabouts had been unknown for the previous five months, and that she had never signed a reunification service agreement. The court ordered all three children continued in out-of-home custody.

The 12-month review hearing for all 3 children took place on January 30, 1990. The report submitted for this hearing indicated that appellant, who was currently incarcerated in the Monterey County jail, had visited with Jessica twice in the four months preceding the hearing, and had signed a service agreement on November 17, 1989. She had made essentially no progress towards reunification.

In light of appellant's long-standing drug abuse problem, the report recommended reunification services be terminated and a permanency planning hearing scheduled. It was further recommended that Jessica remain in her foster placement. At the conclusion of this hearing, the court adopted this recommendation. This appeal ensued.

## I. Relative Placement Preference

■ Appellant first argues that at the 12-month review hearing, the juvenile court should have considered placing Jessica with her grandmother or maternal aunt, in accordance with the mandate of section 361.3.

This section states "(a) In any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative. In determining whether such a placement is appropriate, the probation officer and court shall consider the ability of the relative to provide a secure and stable environment for the child. Factors to be considered in that assessment include, but are not limited to, the good moral character of the relative; the ability of the relative to exercise proper and effective care and control of the child; the ability of the relative to provide a home and the necessities of life for the child; which relative is most likely to protect the child from his or her parents; which relative is most likely to facilitate visitation with the child's other relatives and to facilitate reunification efforts with the parents; and the best interests of the child . . . ." The statute defines relative in subdivision (c)(2) as "an adult who is a grandparent, aunt, uncle, or sibling."

We will review this statutory mandate in light of what the record reveals of the chronology of Jessica's relatives' interest in her custody. We disagree with appellant's characterization of the issue as one of law; in our view, the factual record is crucial to its resolution.

The first mention of this interest appears in the report prepared for the dispositional hearing. It states that although relatives had offered to care for Joel and Paul Z., "[t]hey are unwilling, at this time, to care for the baby, Jessica Z[.], due to her age."

The six-month review hearing report, which was prepared by a second social worker, first acknowledges this refusal and then relates, "[h]owever, recently Jessica's maternal grandmother has expressed her wish to care for this child. She was advised to appear in [c]ourt." While appellant was not present and no witnesses testified at this hearing, Jessica's maternal grandmother did appear, as she had been instructed to do. She requested an opportunity to address the court, to which she said: "Well, at this moment I just want to see if I can get custody or placement for my granddaughter. The infant has been in a forster [sic] home since she was born."

The court did not respond directly to this request. Instead, it made "the requested findings and orders pursuant to the recommendations made by

the Department of Social Services." Those recommendations included one that all three children "shall remain in the care and custody of the Monterey County Department of Social Services for placement in a suitable foster home or relative home."

Next, attached to the report prepared for the 12-month review is a letter from appellant to the court: "I feel that since Paul and Joel are going to stay in the family Jessica should be with my family too. My mother has given good care to my son Frank, [I feel] that is no reason that my daughter could not be with my mother and my father is interested in caring for her too. So if you can't gave my mother a chance please take my father in to consideration. [*Sic*.]"

A letter from Jessica's grandmother is also attached to this report. It states "Your Honorable Judge [¶] If you were to pick up a dictionary and look up the word "family" this is how it would possibly describe the word: parents and their children, relatives, and a group of related things. [¶] This is how I want to make my point. I feel it is important to keep a family together no matter what the circumstances. They should stay together as a family unit. In this case, I am a willing grandparent who wants to keep my family together—as it should be. I am aware that the foster parents want to adopt my granddaughter Jessica and I'm happy that they do and I really appreciate all they have done for her, but I feel it's not right for foster parents to adopt my grandchild, especially when I am willing to be the guardian and take care of her myself and keep her within the family. [¶] I beg you, your Honor, to consider me as Jessica's legal guardian so that she will have the opportunity to stay within her family ties and a chance to know her brothers & sisters and a chance that I may keep my future generation together. Thank you."

Considerable testimony was adduced on the relative placement issue at the 12-month hearing. Ms. Torri, the first social worker assigned to Jessica's case, testified that she had investigated the possibility of placing Jessica with her grandmother or with her maternal aunt, Ida P. Ida, who was caring for Paul and Joel Z., had been unwilling to take on another child. The grandmother had also declined to take Jessica at that time because she had custody of appellant's son Frank.

The second social worker, Ms. Santiago, testified that when the case had been transferred to her in February 1989 she had not considered placing Jessica with her maternal grandmother, because she understood that the previous social worker had been unable to make this placement.

Ms. Santiago had next seen the grandmother in May 1989. At that time, the grandmother had told Ms. Santiago that she was interested in having

Jessica. Ms. Santiago ascertained why Jessica had not originally been placed with her grandmother. She then told the grandmother that "if she was interested, she needed to either appear in court or talk with [appellant's counsel] about possible placement with a relative. Also I suggested that she might want also to present a statement to the court, a written statement, about looking out for her interest in the child."

Ms. Santiago reiterated these requirements to the grandmother about a month later, just before the six-month review hearing. Ms. Santiago was aware that the grandmother had appeared at that hearing.

Appellant also testified at the 12-month review hearing. She asked the court to please place Jessica with her grandmother. She felt it would be nice if Jessica was with her grandmother because "she belongs there, because she got other brothers, and she got other sisters."

The grandmother then testified. She told the court that Ms. Torri had told her, in response to a query about Jessica that " 'No, the baby doesn't come with the boys . . . . [¶] I think the baby is better off in a more appropriate home with people with more experience to handle babies, because she's considered a high-risk infant.' "

After Ms. Santiago took over the case, the grandmother told her she would like to see the baby. In response, Ms. Santiago told the grandmother that she was under the impression that the grandmother was not interested in Jessica. The grandmother then expressed her desire for Jessica's custody. She reiterated her request several times at home visits. In conclusion she stated, "They're all aware that we always wanted the baby."

The court then asked the grandmother whether she had ever contacted appellant's counsel about Jessica's custody. The grandmother responded that she had told the judge at the previous hearing and had told the social worker. She had also contacted appellant's counsel who had told her to talk to the social worker.

At the close of testimony, respondent's counsel argued that the social worker had determined prior to the dispositional hearing that neither Jessica's grandmother nor her maternal aunt wanted her custody, and that relative placement was not an option since the preference expressed in section 361.3 no longer existed at the 12-month hearing stage. Since the dispositional hearing, Jessica had been moved to a very successful foster placement, and she should not be moved, since she was emotionally bonded to her foster parents.

Appellant's counsel argued that the court should consider relative placement since Jessica's relatives had requested her custody between the dispositional and the 12-month hearings, and because appellant had requested Jessica be placed with her maternal grandmother. She also stated "It appears here also that there may be some—I don't want to say passing the buck; that isn't the term I mean, but passing of responsibility from me back to the social worker and from the social worker back to me about a relative being interested in taking the child for custody."

In ordering Jessica continued in her foster placement, the court stated "if there was some ambiguity or lack of understanding, there should have been a more vigorous pursuit into court as to changing the status of living earlier." Since there was evidence that it would have been detrimental to remove Jessica from her foster family, the court ordered the status quo as to her custody continued.

Appellant argues here, as she did to the juvenile court, that the mandate of section 361.3 applies at 12-month review hearings, and that because Jessica's grandmother requested Jessica's custody prior to this hearing, the juvenile court had a duty to afford Jessica's relatives a preference for her custody. Respondent renews its argument that section 361.3 applies at the dispositional hearing but not at the 12-month hearing.

This appellate district has had occasion to discuss the application of section 361.3 before. In *In re Baby Girl D.* (1989) 208 Cal.App.3d 1489 [257 Cal.Rptr. 1], the issue was whether relatives who came forward at the permanency planning hearing should have been afforded the preference mandated by the statute. In that case we noted that the "object of dispositional hearings is to find a temporary caretaker who will meet the child's physical and psychological needs while cooperating in reunification efforts. A relative, who presumably has a broader interest in family unity, is more likely than a stranger to be supportive of the parent-child relationship and less likely to develop a conflicting emotional bond with the child." (*Id.* at p. 1493.) When a case moves from reunification to permanency planning, however, and a court determines that a child should be freed for adoption, we held there is "no longer any reason to give relatives preferential consideration in placement." (*Ibid.*)

While *Baby Girl D.* holds that section 361.3 does not apply at the permanency planning hearing stage, it does not delineate whether the statute applies beyond the dispositional hearing. Although we conclude that nothing in the history of section 361.3 mandates that the preference cease once a dispositional order is filed, we are loathe to establish a blanket rule as to when the statute ceases to apply.

The chronology of this case aptly illustrates our reluctance. Here, it appears either that Jessica's grandmother and maternal aunt declined interest in her custody prior to the dispositional hearing, or that her social worker believed she should be placed in a home able to deal with a special needs infant. By the time of the six-month hearing, however, Jessica's grandmother had made her desire for Jessica's custody clear, and had communicated it to the social worker, to the juvenile court, and to appellant's attorney; she had followed through on all the prerequisites to having such a placement considered.

At this juncture Jessica, still less than seven months old, had been in a foster placement for less than six months. In addition, court-ordered reunification efforts between appellant and Jessica were nominally underway.

In light of these facts, we believe the juvenile court at the six-month hearing should have ordered, and the social worker should have made, a thorough assessment of the propriety of placing Jessica with her maternal grandmother, an assessment which should then have been promptly reviewed by the court. What the juvenile court here ordered, that the social worker place Jessica in appropriate out-of-home custody, fell far short of the statutory mandate of section 361.3. It was not enough, under these circumstances, that the social worker be allowed the opportunity to consider such a placement; we conclude a relative placement should, under the statute, have been considered and assessed.

We are cognizant of the additional burden placed on the agency charged with the responsibility for placing a dependent child in out-of-home custody of evaluating a potential relative placement. Nonetheless, it would be harsh indeed for this court to state unequivocally that when a relative expresses a willingness to accept responsibility for a child whose parents cannot care for him or her, that the request can safely be ignored if it is not made prior to the dispositional hearing. We can envision many scenarios under which a relative steps forward early in the dependency process, but after the dispositional hearing and its concomitant out-of-home placement order. When, as here, however, a relative requests custody while reunification efforts are still ongoing, and before any substantial damage would be done to the child by a change in placement, we conclude section 361.3 mandates that the propriety of such a placement at least be assessed.

The difficulty, of course, is that this appeal was taken not from the order made after the six-month review hearing, but from an order made six months later. At that juncture, appellant was incarcerated and had made essentially no progress towards reunifying with Jessica. Perhaps recognizing that the chance of her regaining Jessica's custody was minimal, at best,

appellant made it clear both in her testimony at the 12-month review hearing and in her letter to the court that she would like Jessica to grow up with her extended family. In the intervening six months, however, Jessica's foster family had formed the desire to adopt her, and Jessica had formed an emotional bond to them.

Given that by the time of the 12-month review hearing the chances of reunification were becoming increasingly diminished, and that Jessica had lived with her foster family for almost a year—almost her entire life—we cannot fault the juvenile court for determining at this hearing that it would have been detrimental to remove Jessica from her foster placement. Under these facts, at that juncture, it would have been inappropriate for the juvenile court to have afforded Jessica's grandmother a relative placement preference under section 361.3. We therefore conclude it was not error for the trial court to order Jessica continued in foster care at the 12-month review hearing.

## II.   INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant's next contention on appeal, and the gravamen of her petition for a writ of habeas corpus, is that she was denied effective assistance of counsel. On appeal, she contends the violation resulted from her counsel's failures at the six-month and twelve-month review hearings.

In her writ petition, in addition to similar allegations, she contends that Monterey County's system of representing indigent parents of dependent children represents a per se violation of such a parent's right to effective assistance of counsel.

The appellate courts of this state are divided as to whether parents have a constitutional right to effective assistance of counsel in dependency proceedings. (Compare *In re Ammanda G.* (1986) 186 Cal.App.3d 1075 [231 Cal.Rptr. 372] [right to counsel in § 300 proceedings is statutory, not constitutional; ineffective assistance of counsel claim therefore not cognizable] with *In re Christina H.* (1986) 182 Cal.App.3d 47, 49-50 [227 Cal.Rptr. 41] [a due process right].

It is unnecessary for us to resolve this issue. Even assuming, arguendo, that appellant had such a right, we conclude she has not demonstrated a cognizable claim on this record.

Where an ineffective assistance of counsel claim is applied in dependency proceedings, an appellant must meet the standards set forth in *People v. Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th

1] and *Strickland* v. *Washington* (1984) 466 U.S. 668 [80 L.Ed.2d 674, 693-694, 104 S.Ct. 2052] (*In re Dawn L.* (1988) 201 Cal.App.3d 35, 37 [246 Cal.Rptr. 766]). First, he or she must show that "counsel's representation fell below an objective standard of reasonableness . . . [¶] . . . under prevailing professional norms." (*Strickland* v. *Washington, supra,* 466 U.S. at p. 688; accord *People* v. *Pope, supra,* 23 Cal.3d at pp. 423-425.) Second, he or she must show prejudice, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland* v. *Washington, supra,* 466 U.S. at p. 694 [80 L.Ed.2d at p. 698]; accord *Adoption of Michael D.* (1989) 209 Cal.App.3d 122, 136 [256 Cal.Rptr. 884].) ■ "Where the factual basis for the claim rests in pertinent part on evidence not contained in the record on appeal, a habeas corpus proceeding is the proper vehicle to raise the issue." (*Adoption of Michael D., supra,* 209 Cal.App.3d at p. 136; *People* v. *Jackson* (1973) 10 Cal.3d 265, 268 [110 Cal.Rptr. 142, 514 P.2d 1222].)

■ As to appellant's first contention—that her counsel referred the grandmother to the social worker; that she failed to call any witnesses, to contest the social worker's recommendation, or to in any manner pursue the relative placement issue at the six-month review hearing; that she failed to appeal the order resulting from this hearing; and that she failed to follow up between the six-month and twelve-month review hearings—we agree with respondent that it would be unjust to lay at the feet of appellant's counsel responsibility for appellant's absence from the scene, and from contact with her family, attorney, and case worker, from before the dispositional hearing to after the six-month hearing. Neither will we impose on counsel appointed to represent an indigent parent of a dependent child a duty to represent the interests of that child's grandmother. Nothing in the record before us indicates that appellant communicated her desire to have Jessica placed with her maternal grandmother until between the six-month and the twelve-month review hearings. Nor does section 361.3 impose on counsel for an indigent parent of a dependent child any obligation to pursue the possibility of relative placement; that responsibility falls to the probation officer and to the court.

■ We also reject appellant's contention that counsel's conduct at the 12-month review hearing denied her effective assistance of counsel. Appellant contends her attorney failed first, to adequately cross-examine social worker Torri concerning the conflict between her version, and the grandmother's version, of when the grandmother first expressed interest in Jessica's custody; second, failed to object to inadmissible hearsay in the social worker's testimony; and third, that she should have called Jessica's maternal aunt, Ida P., as a percipient witness to the grandmother and social

worker's conversation. For all that appears on this record, counsel had tactical reasons for choosing to pursue the matter as she did. Even had she performed as appellant contends she should have, however, she has failed to persuade us the result of the proceedings would have been different.

She points to a statement made by the juvenile court at the conclusion of the 12-month review hearing; that "I'm hearing basically two stories of how Jessica started with the foster family, and if there was some ambiguity or lack of understanding, there should have been a more vigorous pursuit into court as to changing the status of living earlier."

As we have already pointed out, the timing of Jessica's grandmother's request for her custody was crucial in this case. By the time of the 12-month review hearing, the request was properly rejected. Nothing in this record persuades us that, at the 12-month review hearing, the court would have removed Jessica from her foster placement and placed her with her grandmother.

The court's statement does, however, reveal the underlying problem in this case; that the statute does not specify when, and by whom, the assessment of a relative's placement request is to be made. In this case, counsel referred the grandmother to the social worker; the social worker referred her to the court; the court deferred to the social worker. And no assessment was carried out prior to the point at which it might still have been possible to change Jessica's placement without detriment to her. The court then chastised counsel for failing to pursue the matter earlier.

In light of appellant's lack of involvement in the proceedings at this juncture, we have no difficulty rejecting the implication in the court's statement that but for her lack of diligence, appellant's counsel should have pursued the matter earlier. We recommend to the Legislature, however, that it address the procedural failings in section 361.3 which this case so aptly demonstrates.

█ In support of the second argument in her writ petition, that Monterey County's system of representing indigent parents of dependent children is a per se denial of effective assistance of counsel, appellant points to a declaration by appellate counsel. In this declaration, appellate counsel states that when she spoke with trial counsel, trial counsel stated that "she had a caseload of a couple of hundred dependency matters for which she gets paid $1200 per month to handle by the county. Because of her case load, she stated that her cases rarely get litigated at the six month review hearing. [Trial counsel] indicated due to the volume of her cases and the

fact she has no office support staff, that it was difficult to keep track of her cases."

While this scenario, if substantiated, casts considerable doubt on Monterey County's ability to provide effective representation to indigent parents of dependent children, it does not aid appellant's claim for relief. As we have previously noted, the factual basis for appellant's counsel's failure to litigate the relative placement issue at the six-month review hearing was her client's absence. The fact that counsel vigorously argued for relative placement at the 12-month review hearing belies appellant's claim that counsel was effectively prohibited from litigating on her clients' behalves. Even had appellant been represented by counsel who was better paid or less overburdened, we are unpersuaded that the outcome of the six-month review hearing would have resulted in Jessica's placement with a relative.

In proceeding H006875, the juvenile court's order of January 30, 1989, is affirmed. In proceeding H007125, the petition for a writ of habeas corpus is denied effective upon finality of our decision in proceeding H006875. (See Cal. Rules of Court, rule 24(a).)

Capaccioli, Acting P. J., and Premo, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 21, 1991.