Filed 1/13/14  In re A.F. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.F., a Person Coming Under the Juvenile Court Law. | H039596 (Monterey County Super. Ct. No. J46192) |
| MONTEREY COUNTY DEPARTMENT OF SOCIAL & EMPLOYMENT SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>A.A., et al.,<br><br>        Defendants and Appellants. | |

## I.  INTRODUCTION

This juvenile dependency matter concerns A.F. (the child).  K.R., the child's maternal grandmother (Grandmother), appeals from the order denying her petition under Welfare and Institutions Code section 388,[1] in which she sought to change the child's placement from a concurrent foster home to her own home.  A.A., the child's mother (Mother), appeals from the juvenile court's orders at the section 366.26 hearing, which included termination of her parental rights.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Grandmother contends that the juvenile court erred by denying her section 388 petition. Mother argues that if the order denying Grandmother's section 388 petition is reversed, the judgment terminating Mother's parental rights under section 366.26 must also be reversed. For the reasons stated below, we will affirm the challenged orders.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Section 300 Petition*

On January 31, 2012, the Monterey County Department of Social and Employment Services (the Department) filed a petition alleging that the child came within the jurisdiction of the juvenile court under section 300, subdivision (b) [failure to protect] and – as to the child's father only – section 300, subdivision (g) [failure to provide support].

The petition alleged that the child's father, R.F. (Father), was incarcerated in county jail. Mother had another child (a four-year-old daughter) who did not live with her.

The Department had received a report from Natividad Medical Center (the hospital) on January 5, 2012. The child had been born on January 3, 2012 and had tested positive for opiates and methamphetamine. Mother had tested positive for opiates, methamphetamine, and marijuana. She admitted having used heroin throughout her pregnancy. The child was in the neonatal intensive care unit (NICU) because of the "severity of his drug withdrawal symptoms." He would need to be hospitalized for another six to eight weeks.

The hospital reported that Mother and Father had visited the child, but they had both been under the influence during some visits. Additionally, during an overnight visit, Mother had fallen asleep and could not be awakened.

Mother had participated in various drug treatment programs. She had left her most recent residential treatment program in October of 2011 after participating for six days. Mother's criminal history included convictions for battery, providing a false

2

identification to a police officer, and driving with a suspended license.  Father's criminal history included convictions for receiving stolen property and being under the influence of a controlled substance.  The latter conviction had been dismissed upon his completion of Proposition 36 treatment.

A Team Decision Making meeting had been held on January 17, 2012.  Mother, Grandmother, and the Department had all participated.  "Due to the serious concerns about [the child's] health and the mother's significant drug problem, the team decision was to file a petition on [the child's] behalf and ask that he be detained in court."

## B.      *Detention Hearing*

At the February 1, 2012 detention hearing, Mother and Father were both present. The juvenile court ordered the child detained, and it found there was no relative presently available with whom the child could appropriately be placed.

## C.      *Jurisdiction/Disposition Report and Hearing*

The Department filed a jurisdiction/disposition report on March 9, 2012, which provided the following information.

The child had been placed in a concurrent foster home upon his discharge from the hospital.  The Department had considered placing the child with Grandmother but had determined "that she is not appropriate for placement . . . due to her behavior during [the child's] hospitalization and her argumentative and accusatory behavior towards medical staff."  The child continued to have medical needs and was extremely sensitive to his environment.  Thus, he required "a caregiver who has a very high level of patience and the ability to work cooperatively with all doctors, social workers, and therapists." According to the Department, Grandmother had demonstrated an inability to control her temper and a focus on defending Mother, rather than on the child's special needs.

3

Grandmother had been informed of her placement denial by letter sent on January 25, 2012.[2] The letter had informed Grandmother that if she disagreed with the Department's decision, she could contact the managing social worker or a supervisor and that if the issues remained unresolved after that, she could submit a written request for conflict resolution.

Grandmother spoke with a social worker on January 26, 2012. Grandmother was upset with the decision not to place the child with her. She explained that she had been advocating for the child since before he was born, by asking agencies to intervene with Mother. She admitted having "emotional regulation issues," explaining that this was the result of brain surgery she had undergone in 2007. The social worker explained the court process to Grandmother and encouraged Grandmother to improve her behavior.

On February 22, 2012, the date of the child's discharge from the hospital, Mother had threatened the social worker and hospital staff, saying she would fight anyone who tried to take the child away from her. Grandmother had likewise been "aggressive" to the social worker and supervisor, "leading to the need to obtain security to moderate the situation." The social worker reported that Mother had also been hostile on the phone.

Mother had recently been attending a methadone clinic and had showed more attentiveness to the child's needs. Mother was in a residential substance abuse program. Father remained incarcerated in county jail. The Department recommended that reunification services be provided to both Mother and Father while noting that both would "have to overcome significant issues . . . before being able to care for the needs of [the child]."

An uncontested jurisdiction hearing was held on March 14, 2012. The juvenile court adopted the findings and orders recommended by the Department, which included

---

[2] In her opening brief, Grandmother asserts that the January 25, 2012 letter is not in the clerk's transcript. In fact, the text of the letter is in an attachment to the jurisdiction/disposition report.

supervised visitation for both Mother and Father (upon his release from custody), but no visitation order for Grandmother. The case plan required Mother to, inter alia, complete a residential alcohol/drug treatment program, attend Narcotics/Alcoholics Anonymous (NA/AA) meetings three times per week, participate in random drug testing, participate and attend individual/family counseling, and complete parent education classes.

### D. *Status Review Report*

The Department filed a Status Review Report on September 5, 2012.

Both parents had been arrested in May of 2012; both had pending charges of conspiracy, burglary, and forgery. Mother was living with Grandmother and was unemployed. Father was again incarcerated in county jail and had not visited with the child.

Mother had been discharged from residential drug treatment twice after testing positive for heroin. As a result of her discharges, Mother had failed to begin any parenting classes at the treatment center. Mother had also failed to regularly visit with the child. During one visit in August of 2012, Mother had "nodd[ed] out" while holding the child. The child had fallen and hit his head.

Grandmother had called the Department to report Mother's whereabouts and Mother's arrest. Grandmother indicated she was trying to help Mother find alternative drug treatment. Grandmother had been visiting the child once per month. In the narrative portion of its report, the Department recommended these visitations cease due to Grandmother's "behavior creating over[]stimulation" for the child. However, the Department included, in the recommendation sections of the report, a recommendation that Grandmother have visitation with the child.

The child continued to have medical problems. He was anemic, had trouble closing his mouth, and had a high number of bowel movements. He also had significant developmental delays, for which he was receiving physical therapy, occupational therapy,

5

and other services.  He showed a healthy attachment to his foster family.  The foster family was "prepared to commit to a permanent plan for the child."

The Department recommended that reunification services be terminated and that the juvenile court set the matter for a section 366.26 hearing.

### E.    Six-Month Review

A contested review hearing was held on October 24, 2012.  Mother testified at the hearing.  She was in residential treatment once again, having done previous stints of 64 days and 32 days.  She had not attended any therapy, as recommended by the Family Mental Health Assessment, nor had she taken any parenting classes.  She had not visited with the child in about four weeks nor attended his medical appointments.  She had attended "a lot" of NA or AA meetings.  Her pending criminal matter had not yet been resolved.  She wanted reunification services continued.

The juvenile court found that reasonable services had been offered and that Mother had "made excuses" and blamed others for her failures.  The court found by a preponderance of the evidence that Mother had not complied with the case plan.  It further found that she had made no "progress towards alleviating or mitigating" the issues that led to the child's removal.

The juvenile court denied Mother's request for continued reunification services and adopted the findings and orders recommended in the Department's six-month review report, including an order that Grandmother have visitation with the child.  The court set the matter for a section 366.26 hearing on February 13, 2013.[3]

### F.    Section 366.26 Report

The Department filed its section 366.26 report on February 1, 2013.  The report reflected that the child had been receiving occupational and physical therapy as well as speech services, and that "[h]e appears to have developed attachments to his foster

---

[3] Grandmother was provided with notice of the section 366.26 hearing on November 1, 2012.

6

family/prospective adoptive family."  The child was "thriving" in the foster family's care, and the foster family was "very motivated" to adopt him.

Mother's supervised visits with the child had been reduced "because of cancelled visits and mother 'nodding out' during her visitation."  Grandmother had one-hour supervised visits with the child each month.  Father had not had any visitation with the child.

The Department recommended that parental rights be terminated and that the juvenile court approve adoption as the permanent plan for the child.  The Department opined that "adoption by his foster parents/prospective adoptive parents is in his best interest."

### G.    *Section 388 Petition*

On February 13, 2013, the date initially set for the section 366.26 hearing, Mother requested a contested hearing, and the juvenile court continued the hearing to March 11, 2013.

Also on February 13, 2013, Grandmother filed a section 388 petition in which she requested the juvenile court change its placement order.  Grandmother requested that "[j]urisdiction of [the child] be returned to [her]."  She indicated that if the juvenile court terminated Mother's parental rights, she would like to adopt the child or become his guardian.

In her petition, Grandmother asserted that the Department had "made false allegations" about her behavior in the hospital.  She stated that she had the child's best interests at heart, that she would "provide and protect him for the rest of his life," and that she would be "in full compliance" with any court orders.

Grandmother attached a print-out of a news story, which had been posted on December 15, 2011 and updated on December 16, 2011.  The news story described Grandmother's efforts to force Mother into jail or rehabilitation because she was using

7

drugs while pregnant with the child. Grandmother's efforts included advocating for legislation on the state level.

Grandmother also attached an undated letter from her to the Department. In the letter, she indicated she was responding to the Department's January 2012 letter, and that she was both appealing the decision and filing a formal complaint.

The Department filed an opposition to Grandmother's section 388 petition on March 8, 2013. The Department noted that Grandmother's response to its January 2012 letter was not delivered until February 2013. The Department further noted that the child had been with his foster family for the past 13 months, where he was making "excellent progress," and asserted that it was in the child's best interests to remain in the foster family's care.

### H. Section 366.26 Hearing/Hearing on Section 388 Petition

On March 11, 2013, the juvenile court held the section 366.26 hearing, followed by the hearing on Grandmother's section 388 petition.

At the section 366.26 hearing, Mother indicated she understood the child would likely not be returned to her care, but told the court that she "would really like" the child to be placed with Grandmother.

The juvenile court found that the child was adoptable and likely to be adopted. It noted that the child had been with the same foster family since his discharge from the hospital. It found that Mother's contact with the child had not been "consistent" and that she had no "significant parental relationship" with the child. The juvenile court further found that the child had "special needs." The court adopted the findings and orders recommended by the Department: it terminated Mother's parental rights and approved adoption as the permanent plan for the child.

Grandmother testified at the hearing on her section 388 petition. She asserted that a lot of the information provided by the Department "is a lie." She referred to the news story about her attempts to get Mother into jail or drug rehabilitation and her efforts to

8

bring about new legislation addressing similar situations. Grandmother asserted that she understood the child's needs were "the utmost Number 1 importance."

The juvenile court asked Grandmother what "change of circumstance" existed and referred to the Department's January 2012 letter stating that it had found her inappropriate for placement. Grandmother explained that although the Department was asserting that she had not responded in a timely manner, "[t]here was no timeframe given in the letter." Grandmother also reiterated her "stance . . . that none of this is true."

The Department argued that Grandmother failed to appeal the January 2012 placement decision in a "timely fashion." The Department further argued that given the child's placement with his foster family for the previous 13 months, it would not be in his best interest to change placement. The Department asserted that there had been no "change of circumstance since he was placed."

The juvenile court found that it was in the child's best interest to remain in the home of his foster family, and it denied Grandmother's section 388 petition.

### I.     *Appeal*

Grandmother filed a notice of appeal from the denial of her section 388 petition. Mother filed a notice of appeal from the juvenile court's orders at the section 366.26 hearing.

## III.  DISCUSSION

Grandmother contends that the juvenile court erred by denying her section 388 petition. Mother argues that if the order denying the section 388 petition is reversed, the judgment terminating her parental rights under section 366.26 must also be reversed. She does not contend there are any other grounds for reversing the juvenile court's orders.

### A.     *Change of Circumstance Petition – Section 388*

Section 388, subdivision (a)(1) provides in part: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action

in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. . . ." Thus, "[t]he petition pursuant to section 388 lies to change or set aside any order of the juvenile court in the action from the time the child is made a dependent child of the juvenile court [Citations]." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415 (*Jasmon O.*).)

The standard of review for an order denying a section 388 petition is abuse of discretion. "The petition is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion. [Citations.]" (*Jasmon O.*, *supra*, 8 Cal.4th at pp. 415-416.)

Regarding a section 388 petition brought to change an earlier placement order after the termination of reunification services, the California Supreme Court has instructed that "the predominant task of the court [is] to determine the child's best interest. . . ." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 320 (*Stephanie M.*).) "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interest of the child. [Citation.] A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interest of the child." (*Id.* at p. 317.)

Thus, "when a court has made a custody determination in a dependency proceeding, ' "a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." ' [Citations.]" (*Stephanie M.*, *supra*, 7 Cal.4th at p. 318.) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the

facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citations.]" (*Id*. at pp. 318-319.)

## B.     *Relative Placement Preference – Section 361.3*

Section 361.3, subdivision (a) provides in part: "In any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative." Subdivision (a) also enumerates the factors that the court and social worker must consider in determining whether the child should be placed with a relative. (§ 361.3, subds. (a)(1)-(8).) The factors include "[t]he best interest of the child, including special physical, psychological, educational, medical, or emotional needs." (*Id.*, subd. (a)(1).)

The term *preferential consideration* is defined in the statute: " 'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd. (c)(1).)

The relative placement preference also applies when a new placement must be made. Subdivision (d) of section 361.3 states: "Subsequent to the hearing conducted pursuant to Section 358,[4] whenever a new placement of the child must be made, consideration for placement shall again be given as described in this section to relatives who have not been found to be unsuitable and who will fulfill the child's reunification or permanent plan requirements. In addition to the factors described in subdivision (a), the county social worker shall consider whether the relative has established and maintained a relationship with the child."

Thus, "when a child is taken from his [or her] parents' care and requires placement outside the home, section 361.3 assures an interested relative that his or her application

---

[4] Section 358, subdivision (a) provides in part: "After finding that a child is a person described in Section 300, the court shall hear evidence on the question of the proper disposition to be made of the child."

for placement will be considered before a stranger's request. [Citations.]" (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 863.) However, the relative placement preference established by section 361.3 does not constitute "a relative placement *guarantee*." (*In re Joseph T.* (2008) 163 Cal.App.4th 787, 798.) Nor does section 361.3 "create an evidentiary presumption that relative placement is in a child's best interests." (*In re Lauren R.* (2007) 148 Cal.App.4th 841, 855; see also *Stephanie M.*, *supra*, 7 Cal.4th at p. 321 [construing former section 361.3].)

This court has stated that the relative placement preference does not apply after reunification services are terminated. (*In re Baby Girl D.* (1989) 208 Cal.App.3d 1489, 1493-1494.) "[O]nce the juvenile court determines at a permanency planning hearing that reunification [with the parents] is no longer possible and that a child should be freed for adoption, there is no longer any reason to give relatives preferential consideration in placement. The overriding concern at this point is to provide a stable, permanent home in which a child can develop a lasting emotional attachment to his or her caretakers. It is for this reason that in any subsequent decision on adoptive placement, a foster parent to whom the minor already has 'substantial emotional ties' necessarily is entitled to preference over all other candidates. [Citation.]" (*Ibid.*; see also *In re Jessica Z.* (1990) 225 Cal.App.3d 1089, 1098 (*Jessica Z.*) [the child's best interest may require that placement with a grandmother be rejected].)

### C. *Analysis*

#### 1. **Standing and Failure to Exhaust Administrative Remedies**

The Department suggests that Grandmother may not have standing to appeal in this matter.

"Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal. [Citations.] An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote

12

consequence of the decision. [Citations.]" (*In re K.C.* (2011) 52 Cal.4th 231, 236 (*K.C.*).)

In *K.C., supra,* 52 Cal.4th 231, the Supreme Court indicated that a grandparent has standing to challenge the denial of a section 388 petition under circumstances similar to those in the present case. As here, the child in *K.C.* was removed from the parents and placed with a foster parent who wished to adopt him. (*Id.* at p. 234.) The juvenile court bypassed reunification services for the parents and set a section 366.26 hearing. The child's grandparents then filed a section 388 petition, seeking to place the child in their home. At a combined hearing, the juvenile court denied the grandparents' section 388 petition, selected adoption as the permanent plan, and terminated the parents' rights. (*Id.* at p. 235.) Both the father and the grandparents appealed, but the grandparents' appeal was dismissed as untimely. (*Ibid.*)

The *K.C.* court held that the father had no standing to appeal the denial of the grandparents' section 388 petition. (*K.C., supra,* 51 Cal.4th at pp. 238-239.) The court explained that the father did not contest the termination of his parental rights and thus "relinquished the only interest in K.C. that could render him aggrieved by the juvenile court's order declining to place the child with grandparents." (*Id.* at p. 238, fn. omitted.) In rejecting the father's standing claim, the court noted: "The only parties with standing to appeal—grandparents—did not file a timely notice of appeal." (*Id.* at p. 239.)

Following the guidance of the Supreme Court in *K.C.*, we conclude that Grandmother has standing to appeal from the denial of her section 388 petition. (Cf. *In re Aaron R.* (2005) 130 Cal.App.4th 697, 703 [maternal grandmother had standing to appeal the denial of her section 388 petition because granting of the petition would have given her "the protected rights of a 'relative caretaker' under section 366.26, subdivision (k)"].) Although the *K.C.* court's statement about the grandparents' standing is arguably dicta, "even dicta of the Supreme Court should not be disregarded by an intermediate court without a compelling reason. [Citations.]" (*California Coastal Com.*

13

*v. Office of Admin. Law* (1989) 210 Cal.App.3d 758, 763.) No such compelling reason exists in this case.

The Department further suggests that Grandmother may be precluded from pursuing this appeal because of her failure to administratively appeal the Department's initial decision rejecting her for placement. However, Grandmother is not appealing the initial placement decision but rather the denial of her section 388 petition. We decline to find that her failure to take earlier action in the proceedings below bars her from challenging the denial of the section 388 petition on appeal.

### 2. Abuse of Discretion

As indicated above, in order to grant Grandmother's section 388 petition, the juvenile court needed to find that there was "new evidence or that there are changed circumstances that make a change of placement in the best interest of the child. [Citations.]" (*Stephanie M., supra,* 7 Cal.4th 295, 317.) Below, the juvenile court found that it was in the child's best interest to remain in the home of his foster family. We must determine whether the juvenile court abused its discretion by so finding. (See *id.* at p. 318.) Our analysis is guided by the California Supreme Court's decision in *Stephanie M.* and this court's prior decision in *Jessica Z.*

In *Stephanie M.*, the maternal grandmother requested placement after Stephanie was detained and placed in foster care. (*Stephanie M.*, *supra*, 7 Cal.4th at pp. 303-304.) The social worker recommended against placement with the grandmother because the grandmother did not believe that the parents had abused Stephanie. As the case progressed, Stephanie remained with the foster parents, who had applied for de facto parent status and who wished to adopt her. (*Id.* at pp. 305-306.) After the juvenile court set a section 366.26 hearing, the court held a contested section 388 hearing regarding whether Stephanie's placement should be changed from the foster parents to the grandmother. The juvenile court denied the section 388 petition on the ground that the change of placement was not in Stephanie's best interest. (*Id.* at pp. 307-308.)

14

On appeal, the appellate court reversed the order, finding that the juvenile court had failed to give sufficient weight to the relative placement preference set forth in section 361.3. The California Supreme Court disagreed, stating that "the issue being litigated at the hearing was whether a change of placement to the grandmother's home would be in the best interest of the *child*. The juvenile court, unlike the Court of Appeal, properly focused on the child's interest, rather than the grandmother's interest. From the point of view of the child, the grandmother's intervention did come too late; the child was already bonded to foster parents." (*Stephanie M.*, *supra*, 7 Cal.4th at p. 323.)

The *Stephanie M.* court also ruled that even assuming that the relative placement preference set forth in section 361.3 applies at a late stage of the dependency proceedings, "on the motion for change of placement, the burden was on the moving parties to show that the change was in the best interest of the child *at that time*. Evidence that at earlier proceedings the court had not sufficiently considered placement with the grandmother was not relevant to establish that at the time of the hearing under review, placement with the grandmother was in the child's best interest." (*Stephanie M.*, *supra*, 7 Cal.4th at p. 322, fn. omitted; *id.* at p. 320.)

Our Supreme Court therefore concluded in *Stephanie M.* that "[t]he Court of Appeal erred in giving too great weight to the grandmother's interest in maintaining a family tie with the child and substituting its judgment for that of the juvenile court. Putting aside the question whether the grandmother had any cognizable interest at all, and treating her as a parent, her interests were not significant compared to the need of the child for stability. [Citation.]" (*Stephanie M.*, *supra*, 7 Cal.4th at. p. 324.) The court concluded, "[t]he Legislature has declared that a dependent child has an interest in continuity and stability in placement. [Citations.] This interest was served by the order denying change of placement." (*Id.* at p. 326.)

In *Jessica Z.*, this court considered the mother's contention that Jessica should have been placed with her grandmother pursuant to section 361.3. (*Jessica Z.*, *supra*,

225 Cal.App.3d at p. 1095.)  At the 12-month review hearing, the juvenile court terminated reunification services and adopted the social worker's recommendation that Jessica remain in her foster placement and a section 366.26 hearing be set.  (*Ibid*.)  Although this court determined that the juvenile court should have ordered an assessment of the grandmother's suitability as a placement at the earlier six-month review hearing, the juvenile court's order was upheld.  This court stated, "Given that by the time of the 12-month review hearing the chances of reunification were becoming increasingly diminished, and that Jessica had lived with her foster family for almost a year—almost her entire life—we cannot fault the juvenile court for determining at this hearing that it would have been detrimental to remove Jessica from her foster placement.  Under these facts, at that juncture, it would have been inappropriate for the juvenile court to have afforded Jessica's grandmother a relative placement preference under section 361.3.  We therefore conclude it was not error for the trial court to order Jessica continued in foster care at the 12-month review hearing." (*Id*. at p. 1100.)

Following the decisions in *Stephanie M.* and *Jessica Z.*, we determine that even assuming that the section 361.3 relative placement preference applied to Grandmother's request for a change of placement in her section 388 petition, the juvenile court could reasonably find that it was not in the child's best interest to remove the child from his stable, long-term placement and place him with Grandmother.  The evidence before the juvenile court showed that by the time Grandmother filed her section 388 petition in February of 2013, the 13-month-old child had been living with the foster family for nearly his whole life since his birth in January of 2012.  It was undisputed that the child was healthy and happy in the foster family's home, that he had bonded with the family, and that the foster parents wanted to adopt him.  By contrast, there was no evidence that the child had established a bond with Grandmother; in fact, there was evidence that Grandmother's visits were over-stimulating for the child.  (See *Stephanie M.*, *supra*, 7 Cal.4th at p. 326.)  Additionally, the juvenile court had terminated reunification

16

services in October of 2012, after Mother failed to follow the case plan, and it was therefore apparent that reunification was very unlikely.

Although we recognize Grandmother's sincere interest in her grandchild, under these circumstances we find, as did the California Supreme Court in *Stephanie M.*, that "[t]he juvenile court . . . properly focused on the child's interest, rather than the grandmother's interest. From the point of view of the child, the grandmother's intervention did come too late; the child was already bonded to foster parents." (*Stephanie M.*, *supra*, 7 Cal.4th at p. 323.)

For these reasons, we determine that the juvenile court did not abuse its discretion in denying Grandmother's section 388 petition. Having so concluded, we need not address Mother's contention that the judgment terminating Mother's parental rights under section 366.26 must be reversed if the order denying the section 388 petition is reversed.

## IV.  DISPOSITION

The juvenile court's March 11, 2013 order denying the section 388 petition and the March 11, 2013 judgment terminating Mother's parental rights under section 366.26 are affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.


WE CONCUR:


_____
MÁRQUEZ, J.


_____
GROVER, J.


17