Filed 8/21/20  In re K.L. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re K.L., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>Plaintiff and Respondent;<br><br>v.<br><br>S.L.,<br><br>Defendant and Appellant. | E073503<br><br>(Super.Ct.No. RIJ1800027)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni, Judge.  Affirmed.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory P. Priamos, County Counsel and James E. Brown, Anna M. Marchand and Julie Koons Jarvi, Deputy County Counsel for Plaintiff and Respondent.

1

In 2018, one month old K.L. was declared a dependent and removed from custody of his mother, Ke.L.  The intervention occurred after instances where mother treated the infant roughly, failed to supervise him or tend to his needs, and ultimately violently assaulted the maternal grandmother (grandmother).  Mother then snatched her child away from the maternal aunt so roughly that the baby's head snapped backwards.  Grandmother requested placement of K.L., but the request was denied because mother objected to that placement and because grandmother had a restraining order against mother, which would impede reunification efforts.  Months later, grandmother's home was approved, but the court maintained K.L. in the home of a nonrelative extended family member at mother's request.  On the eve of the selection and implementation hearing pursuant to Welfare and Institutions Code, section 366.26, grandmother filed a Request to Change Court Order, pursuant to section 388, again seeking placement, which was denied.  Mother's parental rights were terminated but she did not appeal.  Grandmother appeals from the denial of her 388 petition.

On appeal, grandmother argues (a) the juvenile court erred in failing to hold a hearing at which the grandmother's relative placement preference request could be considered, and (b) the court abused its discretion in denying her placement request.  We affirm.

## BACKGROUND

On January 9, 2018, the Riverside Department of Public Social Services (DPSS) received a referral after the maternal grandmother of K.L., less than one month old, was

2

assaulted by K.L.'s mother, Ke.L.,[1] after grandmother attempted to correct mother's rough manner of suctioning the child's nostrils. Grandmother slapped mother's leg to get her to stop hurting the child, and mother threw the child onto the couch and started beating grandmother with her fists on the back of the head. Mother's sister (aunt) picked up the child, who was crying after the rough placement, to comfort him, but mother grabbed him away with sufficient force to cause his head to snap back. Mother then left the home.

The medical examination of the baby was unremarkable except that a CT scan showed evidence of calcified cephalohematoma, a calcified blood clot occurring as a birth injury (https://radiopaedia.org/articles/cephalohaematoma, as of Aug. 12, 2020), and irritation from a band-aid placed over the spot where the infant was administered a vitamin K shot shortly after birth. In the hospital, the social worker observed that mother did not pay attention to the child, ignoring his cries, and had to be prompted to feed the child. When mother breast fed the baby in the waiting area of the hospital, she disrobed from the waist up, making no attempt to cover herself, causing discomfort for the social worker, medical staff, and other patients in the waiting area.

In talking with the social worker, mother was unable to state what kind of feeding, diaper changing, or sleeping schedule she followed with the baby, and demonstrated she did not know how to burp the baby. Mother also acknowledged she had not bathed the baby since his birth, or even given him a sponge bath, indicating she had been instructed

---

[1] To avoid confusion, we will simply refer to her as mother.

not to bathe him for two weeks by the hospital when he was born. She also revealed she only wiped down spit up or cleaned his genitals during a diaper change. When asked why she had not bathed him after he reached two weeks of age, mother indicated she did not have money for supplies. Mother stayed with the child who was kept in the hospital overnight for tests, but she exhibited a lack of bonding with her baby, and seemed unconcerned for the child's discomfort as multiple attempts were required to draw blood; she did not attempt to soothe him. The child was taken into protective custody on January 11, 2018.

Additional investigation revealed mother did not know who the father of the baby was, although she suspected it was one of two men. Mother had a history of methamphetamine use, which she stopped using when she learned she was pregnant with the minor, but she had experimented with other drugs and alcohol, as well. Mother had a criminal history for prostitution, for which she needed to "book and release" at jail due to a violation of probation, and she had worked as a stripper at a topless nightclub prior to giving birth. She also had a history of mental illness, including two hospitalizations when she was a teenager.

DPSS filed a dependency petition pursuant to Welfare and Institutions Code,[2] section 300, subdivisions (b)(1) and (g). As amended, the allegations against mother related to her failure to supervise, protect, or provide necessaries for the minor, her

---

[2] All future statutory references will be to the Welfare and Institutions Code, unless otherwise indicated.

4

mental health issues, transient lifestyle, criminal history, and the incident of domestic violence involving the maternal grandmother. The allegations under section 300, subdivision (g), related to the inability to identify or locate the father of the baby.[3]

On January 11, 2018, DPSS sought a Resource Family Approval of grandmother's home for an emergency placement of the minor, but that approval was denied because grandmother had a Child Protective Services history, which would require an exemption. The social worker indicated that an exemption would be requested so the grandmother's approval effort would continue. In the meantime, the child was detained in the home of a nonrelative extended family member (NREFM).

At the detention hearing on January 17, 2018, the court found that a relative able to care for the child was unavailable but noted that this was a temporary finding which did not preclude later placement with the relative under section 361.3.

Pending the jurisdiction hearing, the grandmother and aunt visited with K.L. At the visit, neither relative would burp the baby; they also requested that the caregiver fix the baby's bottle and change his diaper. When playing with the baby on a play mat, they had the child facing away from them and did not "speak kindly" about mother.

The jurisdiction hearing was conducted on March 9, 2018; grandmother was not present. Mother submitted the issue of jurisdiction and disposition on the social worker's reports. The court made true findings as to all the allegations and sustained the petition,

_____

[3] One of the men identified by mother as a possible father was eventually located and subjected to DNA testing, which eliminated him as a possible father.

finding the minor comes within section 300, subdivisions (b) and (g). The court removed custody of the child from mother and ordered reunification services.

On May 23, 2018, grandmother received a Resource Family Approval Certificate, approving her home for placement of K.L. In August 2018, DPSS submitted its six-month status review report, recommending that the dependency continue for six months with the minor in his current placement, and that family reunification services continue. Regarding relative placement, the social worker noted that while grandmother had been denied emergency placement of the minor previously, her home had been approved on May 23, 2018.

However, the social worker also reported that during monthly visits, the grandmother was very "hands off," and that she had an active restraining order against the mother; insofar as the case was still in reunification mode, the social worker's opinion was that placement with grandmother would not be in the child's best interest. Most importantly, mother was adamant that the minor should not be placed with grandmother. At the review hearing, the court adopted the recommendations of the social worker.

In February 2019, DPSS submitted its report for the 12-month review hearing. The social worker recommended that the child remain in his current placement, family reunification services be terminated, and that a hearing on the selection and implementation of a permanent plan pursuant to section 366.26 be set. Up until December 2018, mother's visits had gone well and the caregiver gave positive feedback, even suggesting longer visits. But shortly thereafter, mother's recent conduct at K.L.'s

6

first birthday party caused the caretaker to question mother's ability to provide care for the child when she did not interact with her son, appeared to be unconcerned about him, and began singing loudly while people were eating dinner.

The report also indicated that grandmother still had a restraining order against mother (which would not expire until February 2021), which precluded placement of K.L. in her home. Additionally, the report described grandmother's interactions with K.L. during visits as demonstrating grandmother's inability to comfort the child or soothe him when she visited alone. The child was calm when the aunt was present, but was fussy when grandmother had contact with him alone. Mother continued to object to placement of the child in the grandmother's home.

On March 14, 2019, in an addendum report, the social worker indicated she had seen an extremely long Facebook post by mother in which she rambled for pages about life in existential terms, causing the social worker to seek input from mother's therapist about mother's depression. The social worker again recommended that services be terminated. At the review hearing held on March 19, 2019, the court adopted the social worker's recommendations, found there was no possibility of return of the child to mother within six months. The court terminated reunification services and set a section 366.26 hearing, after limiting mother's educational rights.

Regarding placement with grandmother, the court found that DPSS had made diligent efforts to locate relatives and that each relative whose name had been submitted had been evaluated.

On July 5, 2019, the social worker submitted a section 366.26 report, recommending termination of parental rights. The report referred to grandmother's request for relative placement, but the social worker explained that the outstanding restraining order had been a concern for placement while the case was in reunification mode. The social worker also recounted grandmother's ongoing problems comforting or caring for the child during visits, noting that when grandmother was alone with the child, he was fussy, although when the aunt was present he was more calm. The social worker reiterated that mother did not want the child placed with grandmother.

On July 10, 2019, grandmother filed a Request to Change Court Order pursuant to section 388. By way of changed circumstances, grandmother stated that she received RFA (Resource Family Approval) on May 23, 2018, had maintained visits and shared a bond with K.L. Addressing the best interests prong, grandmother explained her joy in being a grandmother, that the restraining order that had prevented placement in her home during the dependency was no longer in place, and that she and the aunt had remained active in K.L.'s life. The court ordered a hearing.

On July 23, 2019, prior to the 366.26 being heard, the court heard testimony on the section 388 petition. Among the witnesses were a social worker who had been assigned as the continuing services worker between March and August 2018. The worker explained that one of the problems facing grandmother's application for placement was the contentious relationship between mother and grandmother while the case was in

8

reunification mode. At the time this worker was assigned, mother was making progress in her services.

The social worker was also concerned about grandmother's interactions with the child during her visits, where she would not change his diaper or be able to comfort him without the aunt being present. Instead, when K.L. needed comforting or a diaper change, grandmother would ask the caretaker to do so, or else the child would return from visits with an unchanged diaper. The social worker also indicated that some visits were canceled by grandmother when the aunt was unable to attend.

Grandmother testified about her earlier involvement with Child Protective Services in 2008, when mother was a teenager, for which an exemption had been provided. She described her efforts to gain placement of K.L., which included contacting the original social worker, going through the RFA process, and visiting regularly. Grandmother had expected K.L. to be placed with her in May 2018, but was told that because of the restraining order, she would not be able to supervise visits or help towards reunification. However, she did not attend any hearings until August 2018, because she was under the impression she had to be invited.

Mother also testified at the hearing and opposed grandmother's request for placement because she did not want K.L to go through what she had gone through. Mother described a beautiful relationship with the caretakers, and hoped to maintain a relationship with her son after adoption. Mother also submitted a letter to the court

9

saying she wanted the current caretakers to adopt her son as they would provide the healthiest home for him.

After hearing the evidence, the court denied the request for placement. The court then proceeded with the section 366.26 hearing, where it found the child adoptable and that termination of parental rights would not be detrimental. The court terminated mother parental rights and ordered that the current caretakers be given preference for adoption. Grandmother appealed.[4]

**DISCUSSION**

1.      *The Trial Court Properly Considered Relative Placement Preference,*

*Which Is Now Moot.*

Grandmother argues that the trial court should have conducted a section 361.3 hearing soon after May 23, 2018, the date on which grandmother's home was certified for relative placement. Specifically, she argues that the court incorrectly waited for over a year and a half in order to conduct "a 361.3 hearing." We disagree.

First, the record demonstrates the trial court did consider relative placement as early as the detention hearing (when emergency placement was denied due to prior CPS

---

[4]  On September 9, 2019, mother's trial counsel filed a notice of appeal from the termination of parental rights on mother's behalf. (E073646, *In re K.L.; Riverside DPSS v. K.L.*) However, on January 14, 2020, mother's counsel on appeal submitted a letter brief indicating no arguable issues had been identified and requesting that this court exercise discretion to independently review the case pursuant to *In re Sade C.* (1996) 13 Cal.4th 952, 989. On January 15, 2020, we informed mother she could file a supplemental brief on her own, but she did not do so. Mother's appeal was dismissed on February 21, 2020, and the remittitur issued on May 27, 2020. Mother's appeal rights have been exhausted, but were still ongoing through much of the pendency of grandmother's appeal.

10

history), as well as again on the date of the disposition hearing and continuing through the date on which mother's reunification services were terminated. At each hearing, the court explained its reasons for not placing the child with grandmother based on the existence of the restraining order and mother's request to not place K.L. with grandmother.

Section 361.3, subdivision (a), provides in part that in any case in which a child is removed from the physical custody of his or her parents pursuant to section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative. "[W]hen a relative requests placement of the child prior to the dispositional hearing, and the Agency does not timely complete a relative home assessment as required by law, the relative requesting placement is entitled to a hearing under section 361.3 without having to file a section 388 petition." (*In re Isabella G.* (2016) 246 Cal.App.4th 708, 712.)

There is nothing in section 361.3 that commands a separate hearing at which relative placement preference can be considered or decided, unless the agency has failed to timely investigate such a placement. Rather, the statute only requires that when a child has been removed from a parent's custody, preferential consideration is to be given to the request by a relative for placement. (§ 361.3, subd. (a).)

Here, the trial court timely considered the grandmother's request for placement at each hearing leading up to the permanency planning, and the agency properly investigated and assessed the grandmother's home for placement. Grandmother did not

11

appear in court until eight months after the child had been placed with his NREFM caretakers, stating she thought she needed to be invited. Grandmother also did not object to the placement with the NREFM caretakers, does not complain she lacked notice of the hearings, and did not appeal from the placement orders. She waited more than one year after receiving the approval to file her section 388 petition, and cannot complain now that her request for placement was not fully aired at an earlier hearing. (*In re Elizabeth M.* (1991) 232 Cal.App.3d 553, 563.)

Second, the issue is now moot. "An appeal becomes moot when, through no fault of the respondent, the occurrence of an event renders it impossible for the appellate court to grant the appellant effective relief." (*In re Esperanza C*. (2008) 165 Cal.App.4th 1042, 1054-1055, citing *In re Jessica K*. (2000) 79 Cal.App.4th 1313, 1315–1316*; Consol. etc. Corp. v. United A. etc. Workers* (1946) 27 Cal.2d 859, 863.) "An appellate court will not review questions which are moot and only of academic importance, nor will it determine abstract questions of law at the request of a party who shows no substantial rights can be affected by the decision either way." (*In re Esperanza C., supra*, at p. 1054.)

Here, mother's appeal from the order terminating her parental rights was dismissed, and a remittitur was issued in May 2020.[5] Although up to that point, grandmother's appeal was not moot, the judgment terminating parental rights is now final, and adoptive preference has been given to the NREFM caretakers. At this point,

---

[5] We have taken judicial notice of mother's appeal and the order dismissing same in case No. E073646, *In re K.L.* (See fn. 4, *ante*.)

under all relevant authorities, the relative placement preference no longer applies.  (*In re Sarah S.* (1996) 43 Cal.App.4th 274, 285.)

There was no error.

2.　　*The Trial Court Did Not Abuse Its Discretion in Denying Grandmother's 388 Petition.*

Grandmother argues that the trial court abused its discretion in denying her section 388 petition seeking placement of K.L.  We disagree.

To prevail on a section 388 petition the moving party must show:  (1) new evidence or changed circumstances; and (2) the proposed change would promote the child's best interests.  (*In re D.B.* (2013) 217 Cal.App.4th 1080, 1089.)  If a relative uses a request to change a court order (§ 388) as the vehicle for obtaining placement of a child, then the juvenile court should apply the section 361.3 statutory criteria when deciding the issue of placement, rather than "the generalized best interest showing required under section 388."  (*In re Isabella G.* (2016) 246 Cal.App.4th 708, 722, fn. 11.)  We review an order denying a section 388 petition for an abuse of discretion.  (*In re Angel B*. (2002) 97 Cal.App.4th 454, 460.)

Initially, we point out that the relative placement preference, is just that:  a preference.  "[T]he statute express[es] a command that relatives be assessed and *considered* favorably, subject to the juvenile court's consideration of the suitability of the relative's home and the best interest of the child."  (*In re Stephanie M*. (1994) 7 Cal.4th 295, 320.)  But this command is not a guarantee of relative placement.  (*In re Joseph T*.

13

(2008) 163 Cal.App.4th 787, 798.)  Nor does section 361.3 "create an evidentiary presumption that relative placement is in a child's best interests." (*In re Lauren R.* (2007) 148 Cal.App.4th 841, 855.)

The juvenile court must still determine whether placement with the relative is appropriate, taking into account a host of factors.  (*Stephanie M., supra,*7 Cal.4th at p. 321.)  These factors include (1) the best interest of the child; (2) the good moral character of the relative and any other adult living in in the home, including whether any individual residing in the home has a prior history of violent criminal acts or has been responsible for acts of child abuse or neglect; (3) the relative's ability to provide a safe, secure, and stable environment; and (4) the relative's ability to protect the child from his or her parents.  (§ 361.3, subd. (a).)  One of the significant criteria to be considered in evaluating a relative placement is the wishes of the parent.  (§361.3, subd.(a)(2).)

In other words, "'[p]referential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd. (c)(1).)  The preference applies at the disposition hearing and thereafter "whenever a new placement of the child must be made." (§361.3, subd. (d); *In re M.H.* (2018) 21 Cal.App.5th 1296, 1302-1303.)  As we have explained, this was properly done at the disposition hearing and at each subsequent review hearing, despite the fact that no new placement was contemplated.

The preference for relative placement does not apply to an adoptive placement. (*In re K.L.* (2016) 248 Cal.App.4th 52, 65-66.)  Once the juvenile court has determined

14

that reunification is no longer possible, the most pronounced reason for trying to maintain family ties ends as well. (*Samantha T. v. Superior Court* (2011) 197 Cal.App.4th 94, 113.) In this respect, the relative placement preference does not supersede the overriding concern of dependency proceedings of the child's best interests whose bond with a foster parent may require rejection of placement of the child with a relative. (*In re Lauren R., supra,* 148 Cal.App.4th at pp. 854-855.)

Thus, after the reunification period has ended, the relative placement preference only arises when a change of placement is required. (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1031.) It does not apply after parental rights have been terminated and the child has been freed for adoption. (*In re Jessica Z.* (1990) 225 Cal.App.3d 1089, 1098.)

Irrespective of whether grandmother was entitled to placement preference at this late stage of the proceedings, "best interests is a complex idea" that requires consideration of a variety of factors. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 530; see also, *In re Jacob P.* (2007) 157 Cal.App.4th 819, 832-833.) After the termination of reunification services, a parent's interest in the care, custody and companionship of the child is no longer paramount. (*In re Stephanie M., supra*, 7 Cal.4th at p. 317.) Instead, the focus shifts to the needs of the child for permanency and stability, and a rebuttable presumption arises that continued foster care is in the best interest of the child. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309-310.)

15

So too, the considerations that favored placement with relatives at the pre-permanency stages of the dependency, and the relatives' interest in care and custody of their relative, are no longer paramount, unless or until a new placement is required. Instead, the juvenile court is properly concerned only with the needs of the child for permanency and stability. In this respect, weighing the permanence and stability that the caretakers had provided for K.L. against the grandmother's inability to interact in an active way during monthly visits, the scales tip in favor of the caretakers.

The evidence adduced at the hearing on grandmother's petition amply supported the trial court's finding that placement of K.L. with grandmother was not in his best interests. There was no abuse of discretion.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____
                                                      P. J.

We concur:

McKINSTER _____
                        J.

RAPHAEL _____
                        J.

16